UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

─────────────────
№ 06-CV-2610 (JFB) (WDW)
─────────────────

RAHEEM CREWS, INDIVIDUALLY AND AS PARENT OF SHAHEEM CREWS, NANCY GILYARD, PATRICK GILYARD, AND SHEMEEKA DAWSON, INDIVIDUALLY AND AS PARENT OF SHAHEEM CREWS,

Plaintiffs,

VERSUS

COUNTY OF NASSAU, ET AL.,

Defendants.
─────────────────

MEMORANDUM AND ORDER
January 30, 2007
─────────────────

JOSEPH F. BIANCO, District Judge:

Plaintiffs Raheem Crews and Shemeeka Dawson, as individuals and as parents of Shaheem Crews, and Nancy Gilyard and Patrick Gilyard (collectively, "plaintiffs"), bring this action against the County of Nassau (the "County"), the County Police Department, County Police Commissioner James H. Lawrence, the County Sheriff's Department, County Sheriff Edward Reilly, the District Attorney's Office, District Attorney Dennis Dillon, and several named and unnamed employees of the County, the County Police Department, the County Sheriff's Department and the District Attorney's Office (collectively, "defendants"), alleging false arrest, unlawful imprisonment, malicious prosecution, and abuse of process under 42 U.S.C. § 1983, as well as various state law tort claims, all arising from the allegedly unlawful arrest, confinement, and prosecution of Raheem Crews ("Crews").

Defendants move to disqualify Arshad Majid ("Majid") and his firm as counsel for plaintiffs. Defendants contend that Majid's continued representation of plaintiffs violates the witness-advocate rule and also presents a conflict of interest because of Majid's personal involvement as Crews' defense lawyer in the underlying criminal action that gives rise to this civil lawsuit. For the following reasons, defendants' motion is granted.

I. BACKGROUND

A. Facts

According to plaintiffs' complaint, County police arrested Crews on May 27, 2005 for his suspected participation in a robbery. The following day, Crews was arraigned on a felony complaint of robbery in the first degree. The felony complaint listed April 26, 2005 as the date of the robbery in which Crews had allegedly participated. However, the robbery actually occurred on March 26, 2005 (hereinafter, the "March 26 robbery"). Defendants argue that the original complaint listed an inaccurate date due to a "ministerial typographical error." (Defs.' Mem. at 7.) By contrast, plaintiffs argue that defendants purposefully listed an inaccurate date in order to "intentionally, maliciously and/or recklessly misle[a]d" Crews and his criminal defense counsel, Majid. (Compl. ¶¶ 87 & *passim*.)

Following Crews' arrest, Majid provided the County District Attorney's Office ("DA's Office") with alibi information for Crews' whereabouts on the inaccurate date listed on the original felony complaint. (*Id.* ¶¶ 109-10.) Subsequently, the DA's Office, in conjunction with the County police, conducted an alibi investigation based on the information provided by Majid. (*Id.* ¶¶ 111, 119-20.)

Thereafter, according to defendants, Assistant District Attorney Kevin Higgins ("ADA Higgins") discovered that the alibi information provided by Majid and the County's alibi investigation did not address the actual date of the robbery. (Defs.' Mem. at 7.) According to defendants, ADA Higgins called Majid on July 15, 2005 and told him about the error. (*Id.*)

By contrast, plaintiffs assert that ADA Higgins first told Majid about the County's error on August 15, 2005. (Compl. ¶ 124.) Subsequently, according to plaintiffs, Majid contacted Crews' family later in the day on August 15, 2005 to determine Crews' whereabouts on the actual date of the robbery. (*Id.* ¶ 128.) Plaintiffs allege that Majid discovered an ironclad alibi for his client: Crews had been detained at a County correctional facility from March 20, 2005, to March 31, 2005, thus precluding him from participating in the robbery. (*Id.* ¶ 134.)

Plaintiffs allege that Majid called ADA Higgins on August 17, 2005 and told Higgins that Crews had been incarcerated at the time of the March 26 robbery, although Majid added that he had yet to confirm Crews' incarceration through documentary evidence. (Compl. ¶ 135.) Plaintiffs also allege that, on September 22, 2005, Majid spoke with another ADA assigned to Crews' case, ADA Greg Madey, and again mentioned Crews' "alibi information" for the March 26 robbery. (*Id.* ¶ 150.)

Defendants dispute that Majid provided this alibi information in mid-August 2005 and, instead, contend that the County was first notified of Crews' alibi on September 28, 2005.[1] (Defs. Mem. at 7-8.) On that date, Majid submitted a notice of alibi (the "Alibi Notice") to the state court asserting that the County Sheriff's Department will "attest that

---

[1] Although the parties dispute when Majid told defendants about Crews' alibi, it is undisputed that Crews was detained in a County correctional facility during late March 2005, and thus could not have participated in the robbery that he was originally charged with taking part in.

2

[Crews] was in . . . custody" at the time of the March 26 robbery.[2] (Pls.' Ex. 13.)

Certain other facts relating to when and if Crews' alibi was relayed to defendants are not in dispute. First, it is undisputed that, by fax dated August 23, 2005, the County notified Majid that Crews' case would be submitted to the grand jury, and offered Crews the opportunity to testify before the grand jury. Although Majid received the grand jury notice after the date upon which plaintiffs allege that Majid knew of Crews' alibi, Crews did not testify before the grand jury. (Compl. ¶¶ 141-42.) Subsequently, on September 8, 2005, the grand jury indicted Crews on charges of robbery in the second degree and robbery in the third degree.

Second, it is undisputed that, on September 22, 2005, Crews was arraigned on the robbery charges in state court. During the arraignment proceeding, Majid informed the court that the original felony complaint against Crews had listed an inaccurate date for the robbery and argued that "the People's case is very weak." (Defs.' Ex. G.) Although the proceeding took place after the date upon which plaintiffs allege that Majid knew of Crews' alibi, Majid failed to inform the court that Crews had been incarcerated at the time of the March 26 robbery.

Crews was released from custody on September 29, 2005, the day after Majid submitted the Alibi Notice to the Nassau County Court. The County dismissed the charges against Crews on October 17, 2005.[3]

In the instant action, plaintiffs allege that defendants knew about and intentionally misled Crews and Majid as to the actual date of the crime, and continued to prosecute Crews despite knowing of his alibi, thereby violating plaintiffs' rights.

II. DISCUSSION

A. Disqualification of Counsel

Disqualification is viewed "with disfavor in this circuit," *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979), because it "impinges on parties' rights to employ the attorney of their choice." *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (citation omitted). In particular, the Second Circuit has noted the "high standard of proof" required for disqualification motions because, among other things, they are "often interposed for tactical reasons, and that even when made in the best of faith, such motions inevitably cause

---

[2] The Court takes judicial notice of certain documents and proceedings in the underlying criminal action only to establish the fact of such litigation, including (1) the notice of alibi dated September 27, 2005, and (2) the transcript of Crews' September 22, 2005 arraignment in Nassau County Court. *See, e.g., Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("Courts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings."); *Weizmann Institute of Science v. Neschis*, 229 F. Supp. 2d 234, 247 n.20 (S.D.N.Y. 2002) (considering a Rule 12b(6) motion to dismiss and taking judicial notice of documents filed in New York state court, including a transcript of a hearing).

[3] According to defendants, the County waited to dismiss the charges until it had verified that Crews was the same "Raheem Crews" that had been incarcerated in a County correctional facility on March 26, 2005. (Defs.' Mem at 8.)

3

delay."[4] *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *accord Gov't India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

Nevertheless, the disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video, Inc. v. Inc. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), and "is only appropriate where allowing the representation to continue would pose a significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (internal quotation marks omitted). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although "not every violation of a disciplinary rule will necessarily lead to disqualification."[5] *Hempstead Video*, 409 F.3d at 132.

B. Grounds for Disqualification of Majid

1. The Witness-Advocate Rule

(a) Standard

The New York Code of Professional Responsibility, Disciplinary Rule 5-102(a) provides, in relevant part, that:

> A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client.

N.Y. Code of Prof. Resp. DR 5-102(a); *see Ramey v. District 141, Int'l Ass'n of Machinists and Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004) ("[W]hen one individual assumes the role of both advocate and witness it '[may] so blur[ ] the line between argument and evidence that the jury's ability to find facts is undermined.'") (quoting *United States v. Arrington*, 867 F.2d 122, 126 (2d Cir.1989)) (alterations in original); *see*

---

[4] Plaintiffs argue that defendants' disqualification motion is a "thinly-veiled dilatory tactic." (Pls.' Mem. at 1.) The Court rejects this argument and notes that defendants sought leave to file the instant motion only ten days after defendants were served with the complaint.

[5] The Court also notes that Civil Rule 1.5(b)(5) of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds attorneys appearing before those courts to the New York State Lawyer's Code of Professional Responsibility. Local Civ. R. 1.5(b)(5); *see, e.g., United States v. Hammad*, 846 F.2d 854, 857-58 (2d Cir. 1988); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y. 1990) ("[I]n this Court federal law incorporates by reference the Code of Professional Responsibility.").

*also MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981) ("A jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight."). This prohibition is one of a number of restrictions that comprise the so-called "witness-advocate" rule. It is subject to four exceptions: an attorney may act as an advocate "and also testify" on behalf of his client only if (1) the attorney's testimony will relate solely to an uncontested issue, (2) there is no reason to believe that "substantial evidence will be offered in opposition to [the attorney's] testimony, (3) his testimony will relate "solely" to the nature and value of legal services rendered in the case, or (4) if disqualification as an advocate would "work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case." *Id*.

The test for disqualification under DR 5-102(a) is "whether the attorney 'ought' to be called" as a witness at trial. *Wickes v. Ward*, 706 F. Supp. 290, 292 (S.D.N.Y. 1989); *see Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 828 (2d Cir. 1992). An attorney ought to testify on behalf of his client if his testimony is "likely to be necessary" to his client's case. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (quoting *S & S Hotel Ventures Limited Partnership v. 777 S.H Corp.*, 508 N.E.2d 647, 650-51 (N.Y. 1987)); *see, e.g., Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989) ("[If] the attorney's testimony could be significantly useful to his client . . . [the attorney] should be disqualified regardless of whether he will actually be called.")*; Norman Reitman Co., Inc. v. IRB-Brasil Resseguros S.A.*, No. 01 Civ. 0265 (RCC), 2001 WL 1132015, at *3 (S.D.N.Y. Sept. 25, 2001). When considering the necessity of testimony, a court should examine such factors as "the significance of the matters, [the] weight of the testimony, and [the] availability of other evidence." *Kubin v. Miller*, 801 F. Sup. 1101, 1113 (S.D.N.Y. 1992) (quotations and citation omitted); *see, e.g., Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 Civ. 4635 (RPP), 2003 WL 1961636, at *7 (S.D.N.Y. Apr 25, 2003).

Moreover, the Court notes that the "policies embodied in the [witness-advocate] rule dictate that a client may not decide to waive his attorney's testimony in order to keep him on as counsel," *Munk v. Goldome Nat. Corp.*, 697 F. Supp. 784, 787 (S.D.N.Y. 1988), and thus a client "cannot choose between the attorney's testimony and [the attorney's] representation." *Tapers v. Local 530 of Operative Plasterers and Cement Masons Int'l Assoc.*, No. 93 Civ. 0154 (JG), 1996 WL 1088933, at *4 (E.D.N.Y. Oct. 24, 1996) (quoting *MacArthur*, 524 F. Supp. at 1209) (applying analogous provision of ABA's Code of Professional Responsibility).

Finally, the Court is aware that the "Second Circuit in particular has repeatedly indicated that [the New York disciplinary rules] need not be rigidly applied," *Renner v. Townsend Fin. Servs. Corp.*, No. 98 Civ. 926 (CSH), 2002 WL 1013234, at *6 (S.D.N.Y. May. 20, 2002), and thus looks to DR 5-102(a) of the New York disciplinary rules solely for guidance as to the Court's exercise of its discretion. *See Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 313 (S.D.N.Y. 2006) (Katz, Magistrate J.) (discussing ethical provisions relating to witness-advocate rule).

(b) Application

The Court finds that Majid ought to testify on behalf of his clients because his testimony is likely to be necessary to his clients' case. Accordingly, for the reasons that follow, Majid is disqualified from acting as counsel for plaintiffs in this case.

Majid's testimony is likely to be necessary because it concerns matters of significance to plaintiffs' claims, would carry substantial weight in this case, and could not be substituted with other evidence. Many of plaintiffs' claims rely on a showing of defendants' knowing or intentional conduct in arresting, prosecuting, and confining Crews despite knowledge of his actual innocence. The parties are in agreement on many of the critical facts underlying plaintiffs' claims. However, there are two disputed events that bear directly on the issue of whether defendants knowingly violated plaintiffs' rights: (1) the date on which the DA's Office informed Majid of the correct date of the robbery; and (2) the date on which the DA's Office learned of Crews' alibi for the March 26 robbery. Plaintiffs seek to establish the timing of these events by pointing to three conversations between Majid and the DA's Office. (*See* Compl. ¶¶ 124, 135, 150.) Establishing that defendants delayed in informing Majid of the actual robbery date and then did not act even after being told of Crews' alibi are both critical facts in plaintiffs' attempt to prove defendants actually intended to mislead and to harm plaintiffs.

As such, Majid's testimony is necessary to plaintiffs' case because first, it is undisputed that the only direct evidence regarding the conversations between Majid and the DA's Office is the testimony of Majid himself and of the ADAs, respectively. Second, as discussed *supra*, defendants dispute both the timing and the substance of these alleged conversations, leaving Majid's testimony as the only direct evidence supporting plaintiffs' depiction of certain critical events – specifically, the alleged phone conversations between Majid and the DA's office. Finally, the Court also notes that, if defendants were found liable for the claims alleged, the timing of these events could bear significantly on the calculation of damages.

Accordingly, the Court finds that Majid's testimony – along with the testimony of the two ADAs – is not only necessary but critical to plaintiffs' case. "[I]t is hard to imagine how [plaintiffs'] claim[s] can succeed without [Majid's] testimony." *Freeman v. Vicchiarelli*, 827 F. Supp. 300, 303 (D.N.J. 1993) (applying analogous witness-advocate rule found in New Jersey's Rules of Professional Conduct); *see Wickes*, 706 F. Supp. at 292 (finding disqualification of plaintiff's counsel proper where "[p]laintiff's case . . . rests substantially, if not entirely," on the testimony of plaintiff's counsel).

Moreover, in addition to the critical nature of Majid's testimony to plaintiffs' case, the witness-advocate rule "operates to protect the interests of the adverse party." *MacArthur*, 524 F. Supp. at 1208. Here, defendants have stated their intention to call Majid as a witness, regardless of whether plaintiffs call him. Moreover, plaintiffs have put at issue both defendants' alleged failure to notify Majid of the actual crime date in a timely manner and defendants' alleged knowledge as early as mid-August 2005 of Crews' alibi obtained from telephone conversations with Majid. As such, defendants are entitled to question Majid as to these events – something defendants cannot do as long as Majid is

6

serving as an advocate in this case. Accordingly, Majid must be disqualified for the additional reason that "[d]efendant[s]' counsel should not be put in the position of foregoing significantly useful . . . testimony."[6] *Munk*, 697 F. Supp. at 787.

The Court also finds that none of the exceptions to DR 5-102(a) apply in this case. First, as discussed *supra*, Majid's testimony would certainly relate to contested issues – specifically, defendants' failure to notify Majid of the actual crime date in a timely manner and defendants' knowledge of Crews' alibi. Second, if Majid were to testify, there is reason to believe that defendants would offer "substantial evidence in opposition" to Majid's testimony, in the form of, at least, ADA Higgins' testimony and evidence relating to the proceedings in state court. Third, Majid's testimony extends to matters beyond the "nature and value of legal services." For instance, Majid's testimony would likely address the alleged acts and omissions of ADAs Higgins and Madey.

Finally, the Court finds that disqualification of Majid as an advocate would not "work a substantial hardship" against plaintiffs. The "substantial hardship" exception" must be narrowly construed, *Wickes*, 706 F. Supp. at 293, and does not favor the retention of Majid as counsel in this case. First, to satisfy the exception, a party must show that the hardship derives from the "distinctive value" offered by the attorney as counsel in this case. Plaintiffs have failed to present any distinctive benefit that would be conferred on plaintiffs by Majid's continued representation in this case. *Cf. MacArthur*, 524 F. Supp. at 1210-11 (offering, as examples of "distinctive value," "a highly technical case" where an attorney "might have acquired unique expertise," or "a situation where an attorney has an extraordinary and irreplaceable familiarity with the affairs of his client"). Second, plaintiffs cannot satisfy the exception by merely pointing to the cost and delay of obtaining substitute counsel. For the purposes of the witness-advocate rule, "substantial hardship" does *not* include such "[c]ost and delay": "if [the] cost of retaining substitute counsel were, without more, deemed to constitute 'substantial hardship' . . . the exception would swallow the rule." *Tapers*, 1996 WL 1088933, at *7 (quoting *United States v. Kwang Fu Peng*, 766 F.2d 82, 87 (2d Cir. 1985)); *see MacArthur*, 524 F.Supp. at 1210 (S.D.N.Y.1981). In addition, although Majid is no doubt familiar with the background of this case, the Court finds that he has not conducted such a substantial amount of trial preparation or litigation efforts at this stage of the case as would justify allowing him to continue despite the necessity of his service as a witness. Accordingly, considering all of these factors, the Court finds that removal of Majid would not impose a substantial hardship upon plaintiffs.

---

[6] The Court notes that the disqualification of Majid in this case is not a close question. The instant case presents a far more pressing need for disqualification of counsel under the witness-advocate rule than in cases where courts, for example, have ordered disqualification of attorneys found to be "the most capable witnesses" on a certain issue. *Munk*, 697 F. Supp. at 787. In this case, Majid's testimony is by far the most critical evidence regarding defendants' alleged intent to mislead Crews and their alleged knowledge as early as mid-August 2005 of Crews' alibi for the March 26 robbery.

2. Conflict of Interest

Defendants also argue that Majid should be disqualified because his "interests are potentially adverse to CREWS' interests in this litigation." (Defs. Mem. at 13.) Specifically, defendants argue that Majid may "modify or adjust his representation . . . to protect himself from revealing information" regarding the adequacy of Majid's representation of Crews in the underlying criminal case that would be "potentially unflattering to [Majid]."[7] (Defs. Mem. at 13-14.)

The Court construes this argument as an attempt to disqualify Majid pursuant to Disciplinary Rule 5-101, which provides that:

> A lawyer shall not accept or continue employment if the exercise of professional judgment on behalf of the client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests, unless a disinterested lawyer would believe that the representation of the client will not be adversely affected thereby and the client consents to the representation after full disclosure of the implications of the lawyer's interest.

N.Y. Code of Prof. Resp. DR 5-101. For the reasons that follow, the Court finds that Majid's judgment on behalf of plaintiffs reasonably may be affected by Majid's own personal interests and that a disinterested lawyer would not believe that Majid's representation of plaintiffs will not be adversely affected thereby. Accordingly, even assuming *arguendo* that Majid's representation of plaintiffs was not barred by the witness-advocate rule, Majid's personal interest in this case would require his disqualification as counsel for plaintiffs.

Defendants have presented evidence, *see supra*, from which a jury may reasonably conclude that Majid failed to diligently appraise the grand jury and the state court of Crews' alibi for the March 26 robbery. Therefore, although the Court makes no finding as to the adequacy of Majid's representation in the underlying criminal action, it does find a reasonable basis to conclude that Majid's personal interest in concealing these alleged errors *may* affect the exercise of his professional judgment on behalf of plaintiffs. *See Gleason v. Zocco*, 941 F. Supp. 32, 35 (S.D.N.Y. 1996) (disqualifying an attorney who had "extensive personal involvement in every aspect of the underlying controversies that led to [the] lawsuit . . . both because of the likelihood that he will be a necessary witness and because of the real and present danger that his personal interests will infringe on his professional representation in ways deleterious to his

---

[7] Although the above analysis regarding the witness-advocate issue would be sufficient, by itself, to disqualify Majid, the Court will also analyze the "conflict of interest" issue raised by defendants because, among other things, it bears on the argument that Majid's firm should also be disqualified. *See, e.g., Conigliaro v. Horace Mann School*, No. 95 Civ. 3555 (CSH), 1997 WL 189058, at *3 (S.D.N.Y. April 17, 1997) ("[T]he cases are uniform in holding that pursuant to [DR 5-102(a)] an attorney's firm should not be disqualified simply because the attorney will testify on behalf of his client.") (quotation omitted); *Kubin*, 801 F. Supp. at 1114 (finding that, absent "conflict of interest considerations . . . in the instant case," "only the attorney-witness who ought to testify on behalf of his client should be disqualified").

8

client"); *cf. United States v. Scala*, 432 F. Supp. 2d 403, 406 (S.D.N.Y. 2006) (finding an "actual conflict of interest" in a criminal case where defense counsel invoked his own fifth amendment privilege, thus "demonstrat[ing] that he is concerned that he might 'be ensnared in ambiguous circumstances' and that . . . [he] has his own interest in [the] case – an interest in not having anything come to light that might further complicate his personal situation") (citation omitted). Moreover, the Court finds that a disinterested lawyer would not believe that Majid's representation of plaintiffs will not be adversely affected by Majid's personal interests. If, as defendants argue, Majid erred in his representation of Crews in state court, Majid would have a significant incentive to tailor his representation of plaintiffs in this case so as to avoid revealing or belaboring his alleged errors. The Court thus finds that the instant situation poses a "significant risk of trial taint," *Glueck*, 653 F.2d at 748, that, if not remedied, would "undermine[] the [C]ourt's confidence in the vigor of the attorney's representation of his client[s]." *Nyquist*, 590 F.2d at 1246. Under such circumstances, even assuming *arguendo* that Majid's continued representation was not barred by the witness-advocate rule, the Court disqualifies Majid as counsel due to his conflicting personal interests in this case.

In sum, having considered the applicable ethical rules to guide the Court's discretion as well as all other relevant factors, the Court concludes that disqualification under the circumstances of this case is warranted. In reaching this conclusion, the Court emphasizes that it has made no finding that Majid's performance in the criminal case was deficient in any way. The Court simply concludes that Majid's performance and his conversations with ADAs Higgins and Madey are so central to his clients' claims in the case that he is a vital fact witness and his continued representation of plaintiffs poses a significant risk of trial taint.

C. Disqualification of Majid's Law Firm

Defendants also argue that "imputed disqualification" of the remaining members of Majid's law firm, Majid & Associates ("Majid's firm"), is warranted in this case. (Defs.' Mem. at 14-15.) Plaintiffs have failed to respond to this argument in either their written submissions to the Court or at oral argument, and thus appear not to contest that imputed disqualification of Majid's firm is warranted in this case. Accordingly, although DR 5-102(A) "'permits a law firm to continue representation of a client even if one attorney of the firm is required to testify,'" *Renner v. Chase Manhattan Bank*, No. 98 Civ. 926 (CSH), 2002 WL 87665, at *1 (S.D.N.Y. Jan. 22, 2002) (quoting *Kaplan v. Maytex Mills*, 590 N.Y.S.2d 136, 137 (N.Y. App. Div. 1992)), the Court exercises its discretion to disqualify the remaining members of Majid's firm from serving as counsel in this case.

The "extremely harsh measure" of "vicarious disqualification" is warranted in cases where, as here, there are "conflict of interest considerations" relating to the disqualified counsel's law firm. *Kubin*, 801 F. Supp. at 1114; *see Yankelevitz v. Cornell Univ.*, No. 95 Civ. 4593 (PKL), 1996 WL 447749, at *3 (S.D.N.Y. Aug. 7, 1996). In this case, as discussed *supra*, there is a reasonable basis to conclude that Majid's personal interest in this matter may affect his representation in ways deleterious to plaintiffs. Similarly, the Court finds a reasonable basis to conclude that the remaining members of Majid's firm may alter their representation in order to protect the

interests or reputation of Majid. In so ruling, the Court notes specifically that it is undisputed that Majid's firm is small – according to defendants, the firm is comprised of two attorneys and three "of counsel" attorneys. As such, members of Majid's firm may feel particularly intense personal or professional pressure to safeguard the interests of the firm's namesake at the expense of zealously representing plaintiffs' interests in this case. Therefore, because the Court finds a "significant risk of trial taint" in allowing Majid's firm to continue representing plaintiffs, and plaintiffs have not even attempted to argue otherwise, the remaining members of Majid's firm are disqualified from serving as counsel in this case. *Glueck*, 653 F.2d at 748.

### III. CONCLUSION

For the foregoing reasons, defendants' motion to disqualify Majid and Majid's firm, Majid & Associates, is GRANTED. Majid and all members of Majid's firm are hereby disqualified from serving as counsel in this case. Thus, plaintiffs will be accorded thirty days to obtain substitute counsel.[8] At the conclusion of that period, if plaintiffs determine that they are unable to afford substitute counsel, plaintiffs may submit a request to this Court for the appointment of counsel. The Court will consider any such request pursuant to its broad discretion to appoint an attorney to persons unable to afford counsel. *See* 28 U.S.C. § 1915(e)(1).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 30, 2007
Central Islip, NY

\* \* \*

The attorney for plaintiffs is Arshad Majid, Esq., of Majid & Associates, P.C., 300 Rabro Drive, Suite 112, Hauppauge, New York 11788. The attorneys for defendants are Nancy Nicotra and Sondra M. Mendelson, Esqs., Office of the Nassau County Attorney, One West Street, Mineola, New York 11501.

---

[8] The Court notes that, on August 31, 2006, Arnold V. Graseck, Jr. ("Graseck"), filed a notice of appearance as co-counsel for plaintiff Crews. However, it appears that Graseck has since declined representation of any of the plaintiffs in this case. According to a letter submitted by Majid, Graseck originally filed an appearance while operating "under the mistaken impression that [p]laintiffs were in a position to pay [Graseck's] legal fees." (Majid's Letter, dated January 24, 2007.) Subsequently, according to Majid, Graseck learned that plaintiffs were unable to retain counsel on anything other than a contingency fee basis and thus declined to serve as counsel. Based on Majid's submissions to the Court on this issue and the absence of any activity in this case by Graseck other than the filing of an appearance, the Court considers Majid to be plaintiffs' sole legal representative in this case, although the Court will confirm that fact with Graseck and plaintiffs.