UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————

№ 06-CV-2610 (JFB) (WDW)

————————————

RAHEEM CREWS, INDIVIDUALLY AND AS PARENT OF SHAHEEM CREWS, NANCY
GILYARD, PATRICK GILYARD, AND SHEMEEKA DAWSON, INDIVIDUALLY AND AS
PARENT OF SHAHEEM CREWS,

Plaintiffs,

VERSUS

THE COUNTY OF NASSAU, "JOHN AND JANE DOES 1-15," THE NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUNTY POLICE COMMISSIONER JAMES H.
LAWRENCE, FIRST DEPUTY POLICE COMMISSIONER ROBERT BISHOP, DEPUTY
POLICE COMMISSIONER JOHN HAVIKEN, ASSISTANT POLICE COMMISSIONER DAVID
MACK, ASSISTANT POLICE COMMISSIONER DENIS MONETTE, CHIEF OF
DEPARTMENT RAYMOND CRAWFORD, CHIEF OF DETECTIVES HERBERT FAUST,
DEPUTY CHIEF OF DETECTIVES PAUL TULLY, INSPECTOR PATRICK O'CONNOR,
DETECTIVE LIEUTENANT ANDREW FAL, DETECTIVE LEMMA, DETECTIVE HOLLAND,
DETECTIVE MESSE, LIEUTENANT JOSEPH BARBIERI, POLICE OFFICER RONALD
ANNARUMMA, "JOHN AND JANE DOES 16-30," THE NASSAU COUNTY SHERIFF'S
DEPARTMENT, SHERIFF EDWARD REILLY, "JOHN AND JANE DOES 31-45," THE
OFFICE OF THE NASSAU COUNTY DISTRICT ATTORNEY, NASSAU COUNTY DISTRICT
ATTORNEY DENIS DILLON, ASSISTANT DISTRICT ATTORNEY MATTHEW LAMPERT,
ASSISTANT DISTRICT ATTORNEY KEVIN HIGGINS, ASSISTANT DISTRICT ATTORNEY
ELISE MCCARTHY, ASSISTANT DISTRICT ATTORNEY GREG MADEY, AND "JOHN
AND JANE DOES 46-60,"

Defendants.

————————————

MEMORANDUM AND ORDER
December 27, 2007

————————————

JOSEPH F. BIANCO, District Judge:

Plaintiffs Raheem Crews ("Crews") and

Shamika Dawson ("Dawson"), as individuals
and as parents of Shaheem Crews, as well as
Crews's mother, Nancy Gilyard, and his

brother, Patrick Gilyard (collectively, "plaintiffs"), bring this action against the County of Nassau (the "County"), the County Police Department (the "Police Department"), County Police Commissioner James H. Lawrence (the "Commissioner"), County Sheriff's Department (the "Sheriff's Department"), County Sheriff Edward Reilly (the "Sheriff"), the District Attorney's Office (the "DA's Office"), District Attorney Dennis Dillon (the "DA"), and several named and unnamed employees of the County, the Police Department, the Sheriff's Department, and the DA's Office (collectively, "defendants"),[1] alleging false arrest, unlawful imprisonment, malicious prosecution, municipal liability, abuse of process, failure to intervene, intentional or reckless supervisory conduct, and conspiracy under 42 U.S.C. §§ 1983 and 1985,[2] and various state law tort claims, all arising from the allegedly unlawful arrest, confinement, and prosecution of Crews.

Defendants move for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the following reasons, defendants' motion is granted in part and denied in part.

I. BACKGROUND

A. Facts

The following facts are taken from the complaint and are not findings of fact by the court. The Court assumes these facts to be true for the purpose of deciding this motion and construes them in the light most favorable to plaintiffs, the non-moving party.

(1) Arrest and Interrogation

On or about May 27, 2005, two or three unidentified defendant police officers arrested Crews, stating that he was "being placed under arrest for robbing an unidentified person at

---

[1] At oral argument, counsel for plaintiffs agreed to dismiss defendants Police Department, the DA's Office, and the Sheriff's Department from the instant action on the well-settled grounds that these entities are "administrative arms" of the same municipal entity – the County – and thus lack the capacity to be sued. *See, e.g., Caidor v. M&T Bank*, 5:05-CV-297, 2006 U.S. Dist. LEXIS 22980, at *7 (N.D.N.Y. Mar. 27, 2006) ("'Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.'") (quoting *Hill v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002)). Thus, the Court dismisses all causes of action against the Police Department, the DA's Office, and the Sheriff's Department. Further, with regard to the individual defendants sued in their official capacities, these claims are duplicative of the municipal liability claim lodged against the County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), discussed *infra*. *See, e.g., Tsotesi v. Bd. of Educ.*, 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003) (dismissing claims against officials sued in their official capacities where plaintiff also sued municipality) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Therefore, the Court dismisses all claims against individual defendants sued in their official capacities. For the reasons discussed *infra*, however, certain of the claims against individual defendants in their individual capacities survive defendants' motion.

[2] While plaintiffs' complaint does not allege conspiracy as a separate cause of action, plaintiffs repeatedly and explicitly state that the alleged conduct underlying the causes of action for malicious prosecution, abuse of process, and failure to intervene was "in furtherance of a conspiracy. . . ." (*See, e.g.,* Compl. ¶ 319.) Plaintiffs also bring these causes of action under Sections 1983 and 1985, which contain a cause of action for conspiracy. Finally, counsel for plaintiffs alleged that defendants engaged in a conspiracy at oral argument. The Court thus analyzes, *infra*, whether plaintiffs' complaint sufficiently alleges a conspiracy under Sections 1983 and 1985.

knifepoint on April 26, 2005." (Compl. ¶ 42.) From approximately 8 p.m. on May 27, 2005 until approximately 6 a.m. on May 28, 2005, unidentified police officers and employees of the DA's Office interrogated Crews about the robbery. (*Id.* ¶ 45.) During this interrogation, the police officers and employees of the DA's Office allegedly told Crews that he would receive a sentence of 25 years' incarceration if he did not confess to the robbery, (*id.* ¶ 47), "repeatedly threatened [Crews] with physical harm," (*id.* ¶ 48), denied him "access to his family," (*id.*), and denied "his lawful right to legal assistance" (*id.* ¶ 51). Crews "repeatedly denied" committing the robbery. (*Id.* ¶ 50.)

### (2) Interrogations of Naquarn Hughlett and Lorenzo Miller

Before Crews's arrest, Naquarn Hughlett ("Hughlett"), Crews's alleged accomplice in the robbery, was detained and interrogated about the robbery by employees of, *inter alia*, the County, the Department, and the DA's Office. (*Id.* at 64.) During the interrogation, Hughlett repeatedly stated that Crews "had no involvement in and was not present during the commission of" this robbery. (*Id.* ¶ 65.) Moreover, even though these defendants refused to permit Hughlett to plea bargain his robbery charge without implicating Crews (*id.* ¶ 70), Hughlett refused to implicate him (*id.* ¶ 71).

In addition, after Crews's arrest, Lorenzo Miller ("Miller"), Crews' other alleged accomplice in the robbery, was also detained and interrogated by employees of, *inter alia*, the County, the Department, and the DA's Office. (*Id.* ¶ 90.) Miller stated that Crews "had no involvement in and was not present during" the robbery. (*Id.* ¶ 90.) Moreover, even though certain named defendants refused to permit Miller to plea bargain his robbery charge without implicating Crews (*id.* ¶ 93), Miller refused to implicate him (*id.* ¶ 94).

The Commissioner, the Sheriff, and the DA – among other of the defendants – allegedly knew that Hughlett and Miller had provided such exculpatory information and did not inform Crews's counsel or the Nassau County Court (the "County Court"), or investigate this exculpatory information. (*Id.* ¶¶ 68-69, 91-92, 95-96.)

### (3) The Felony Complaint

On or about May 28, 2005, Crews was arraigned in the County Court and charged, by means of a Felony Complaint, with Robbery in the First Degree. (*Id.* ¶ 54.) The Felony Complaint identified the date of the robbery as "April 26, 2005." (*Id.* ¶ 55; *see* Pl.'s Exh. 2.) Named defendant police officers "prepared and/or witnessed" the Felony Complaint. (Compl. ¶ 56.) At arraignment, certain of the defendants, including the County, the DA, and Assistant District Attorney Matthew Lampert ("ADA Lampert") allegedly "intentionally requested excessive bail in order to ensure that" Crews's constitutional rights would be violated. (*Id.* ¶ 58.) Crews was subsequently incarcerated at County Jail. (*Id.* ¶ 60.)

Further, the Commissioner, the Sheriff, and the DA, in addition to other named defendants, allegedly knew that "the actual date of the incident in question was in fact March 26, 2005, and not April 26, 2005 as alleged in the Felony Complaint filed with the court," and did not inform Crews's counsel or the County Court. (*Id.* ¶ 68.) While the Complaint does not specify when these particular defendants knew this information, the Complaint alleges that certain other named police officers and Assistant District Attorneys committed perjury "[b]y filing and maintaining said false and

erroneous Felony Complaint with the court while knowing or having reason to know that the actual date of the alleged crime was March 26, 2005 and not April 26, 2005 as represented by defendants. . . ." (*Id.* ¶ 99.)

On June 1, 2005, Crews retained defense counsel. (*Id.* ¶ 61.) Certain of the defendants supplied Crews's counsel with a copy of the Felony Complaint and Crews's criminal history report, which also stated that the robbery took place on April 26, 2005. (*Id.* ¶ 62.)

### (4) The June 9 Conference

On or about June 9, 2005, defendant Assistant District Attorney Kevin Higgins ("ADA Higgins") participated in a conference at County Court with Crews's counsel (the "June 9 Conference"). (*Id.* ¶ 72.) At the June 9 Conference, ADA Higgins stated that Crews, Hughlett, and Miller had committed robbery at knifepoint April 26, 2005, (*id.* ¶ 75), and that a knife had been recovered from Crews (*id.* ¶ 76). ADA Higgins stated that police had not yet arrested the fourth defendant, Jamel Baldwin ("Baldwin"). (*Id.* ¶ 77.) ADA Higgins did not tell County Court or Crews's counsel that the robbery took place at any date other than April 26, 2005, (*id.* ¶¶ 81-82), even though ADA Higgins, the Commissioner, the Sheriff, the DA, and other named defendants allegedly knew prior to the June 9 Conference that the actual date of the robbery was March 26, 2005 and that Crews "had no involvement with" this robbery (*id.* ¶ 83). Moreover, the Complaint generally alleges that acting in such a "non-judicial and investigatory function," ADA Higgins and other prosecutors "were involved in the supervision of key aspects of investigations" related to the robbery. (*Id.* ¶ 80.)

### (5) Crews's Alibis

#### a. Crews's Alibi for April 26, 2005

At the June 9 Conference, Crews's counsel informed ADA Higgins that Crews was at Dawson's home, along with Dawson's mother, on April 26, 2005 during the alleged time of the robbery. (*Id.* ¶ 109.) Crews's counsel was allegedly "assured that acting in a non-judicial and investigatory function, ADA Higgins would conduct and supervise an investigation to confirm this April 26, 2005 alibi information as soon as possible." (*Id.* ¶ 110.) Subsequently, on or about June 28, 2005, ADA Higgins allegedly told Crews's counsel that certain of the defendants were "actively" investigating Crews's alibi for April 26, 2005. (*Id.* ¶ 111.)[3]

On or about July 15, 2005, certain unnamed defendants interviewed Dawson and her mother, and confirmed that Crews was with them during the alleged time of the robbery on April 26, 2005. (*Id.* ¶¶ 119-120.)

On July 26, 2005, Crews's counsel waived Crews's case to the Nassau County Grand Jury. (*Id.* ¶ 121.) Between June 28, 2005 and August 15, 2005, Crews's counsel "repeatedly" requested information from defendants, who provided no exculpatory information regarding Crews. (*Id.* ¶ 122.)

#### b. Crews's Alibi for March 26, 2005

On or about August 15, 2005, ADA Higgins allegedly informed Crews's counsel

---

[3] ADA Higgins also allegedly informed Crews's counsel that Hughlett, and not Crews, had possessed a knife during the robbery, and that Baldwin was not involved in the robbery. (*Id.* ¶¶ 112-13.)

that defendants had completed the investigation into Crews's alibi for April 26, 2005, but that "'it no longer mattered'" because the robbery actually took place on March 26, 2005. (*Id.* ¶ 124.)

On or about August 15, 2005, Crews's counsel requested that defendants provide both counsel and County Court with amended documentation of the robbery, and "was informed by ADA Higgins that no such paperwork would be provided. . . ." (*Id.* ¶ 125.)

On or about August 17, 2005, Dawson informed Crews's counsel that Crews "could not possibly have committed the crime on March 26, 2005" because he was incarcerated at the Nassau County Correctional Facility from March 20, 2005 through March 31, 2005 due to a clerical error." (*Id.* ¶ 134.) Crews's counsel asked Dawson to find documentation of these dates of incarceration. (*Id.* ¶ 134.) Also on August 17, 2005, Crews's counsel allegedly informed ADA Higgins about Crews's alibi for March 26, 2005. (*Id.* ¶ 135.)

(6) Grand Jury Indictment

On or about August 23, 2005, Crews's counsel received a fax from defendant Assistant District Attorney Elise McCarthy ("ADA McCarthy") stating that the Nassau County Grand Jury (the "Grand Jury") would consider the allegations against Crews on August 31, 2005. (*Id.* ¶ 141.) On or about September 8, 2005, Crews's counsel learned that the Grand Jury had indicted Crews. (*Id.* ¶ 142.) Plaintiffs allege that defendants "conspired and condoned the abuse of the considerable power of the Grand Jury and allowed their agents and/or employees to provide false and/or misleading information and/or testimony in an effort to conceal their prior unlawful actions and thereby furthered the

unlawful deprivation of Plaintiff's individual civil liberties." (*Id.* ¶ 324.)

Crews's counsel attempted to obtain a copy of the indictment from the Nassau County Clerk (the "Clerk"), who said that the Clerk had no authority to do so and that Crews's counsel should obtain the indictment from the DA's Office. (*Id.* ¶ 144.) On September 12, 2005, ADA Higgins agreed to send Crews's counsel a copy of the indictment, but Crews's counsel did not receive such a copy. (*Id.* ¶ 146.)

On or about September 22, 2005, Crews's counsel learned from defendant Assistant District Attorney Greg Madey ("ADA Madey") that ADA Higgins was no longer handling the case. (*Id.* ¶ 150.) Further, according to the complaint, "[w]hen questioned by counsel as to why this matter had been presented to the [Grand Jury] notwithstanding the alibi previously provided . . . ADA Madey indicated that following consultation with defendant DA, the decision to present the case to the Grand Jury had been made by defendant DA and other senior members of defendants . . . with final policy making ability." (*Id.* ¶ 150.)

Also on or about September 22, 2005, Crews was arraigned on one count of Robbery in the Second Degree and one count of Robbery in the Third Degree, (*id.* ¶ 157), and Crews's "excessive bail" was continued at the "specific request" of defendants, including the County, the Commissioner, and the DA. (*Id.* ¶ 158.) Crews's counsel obtained a copy of the indictment on this date as well. (*Id.* ¶ 159.) According to the complaint, prior to September 22, 2005, "[d]espite numerous requests for information . . . crucial to the adequate defense of [Crews's case] . . . no paperwork charging [Crews] and bearing the crime date of March

26, 2005 was provided" to the court or to Crews's counsel by defendants. (*Id.* ¶¶ 161-62.)

On or about September 22, 2005, Crews's counsel requested that the Clerk provide documentation of Crews's incarceration during March 26, 2005. (*Id.* ¶ 163.) The Clerk stated that these records were sealed and that Crews would have to provide an affidavit with the request. (*Id.* ¶ 163.) Crews's counsel obtained this affidavit on or about September 24, 2005. (*Id.* ¶ 164.) On or about September 26, 2005, Crews's counsel presented the affidavit to the Clerk, who stated that Crews's counsel would have to obtain the records from the Sheriff. (*Id.* ¶ 165.) That day, Crews's counsel attempted to obtain the records from the Sheriff, but was informed that the records department was closed. (*Id.* ¶ 166.) Crews's counsel was able to obtain the records on September 27, 2005. (*Id.* ¶ 168.)

On or about September 28, 2005, Crews's counsel served the County Court with these records. (*Id.* ¶ 169.) The County Court also granted Crews's counsel's request for an immediate bail hearing. (*Id.* ¶ 172.) No representative of the defendants appeared that day, despite the County Court's "repeated telephone calls." (*Id.* ¶ 172.)

The County Court held the bail hearing on September 29, 2005, at which time Crews's counsel served a Notice of Alibi for March 26, 2005. (*Id.* ¶ 174.) The County Court released Crews on his own recognizance. (*Id.* ¶ 175.) Certain of the defendants, including the named ADAs, refused to dismiss Crews's indictment and requested an adjournment until October 5, 2006. (*Id.* ¶ 176.)

On October 5, 2005, ADA Madey told the County Court and Crews's counsel that defendants required further time to investigate the matter and that ADA Madey was "'not

authorized'" to dismiss the case at the time. (*Id.* ¶ 178.) When Crews's counsel asked ADA Madey why the DA's Office and other defendants were continuing to prosecute Crews despite his being incarcerated at the time of the robbery, ADA Madey allegedly stated that "all decisions regarding the case had been made at the highest level and that due to the fact that defendant DA had been directly and personally involved in all decisions regarding [Crews's] criminal matter, ADA Madey had no discretion as to the disposition of [Crews's] case." (*Id.* ¶ 180.) The case was adjourned until October 17, 2005. (*Id.* ¶ 179.)

At a court conference on October 17, 2005, ADA Madey informed the County Court that other named defendants, including the County, the Commissioner, and the DA, had authorized ADA Madey to dismiss the charges against Crews. (*Id.* ¶ 191.)

### (7) Policies and Practices of Defendants Regarding Minorities

According to the allegations in the complaint, certain of the defendants, including the County, the Commissioner, the Sheriff, and the DA have "created and/or tolerated a long standing policy or custom or deliberate indifference to the civil rights of minorities evidenced by the fact," *inter alia*, "that they have repeatedly failed to adequately discipline their respective agents and/or employees for perjury and/or for assisting in the prosecution of innocent persons. . . ." (*Id.* ¶ 103.) Further, certain of the defendants, including the County, the Commissioner, the Sheriff, and the DA allegedly "have had numerous state and federal civil rights suits filed against them," and have settled many such suits for, *inter alia*, defendants' deprivation of the civil liberties of various individuals, policies toward minorities,

and the prosecution of innocent persons. (*Id.* ¶¶ 105, 152, 153, 185)

Moreover, according to the complaint, "[i]t is well known within the minority community" that certain defendants, including the County, . . . the Commissioner, and Sheriff, . . . and the DA have "created and/or tolerated a long standing policy or custom of deliberate indifference to the civil rights of minorities, often abusing the considerable power of the Grand Jury by providing false and/or misleading information . . . and assist[ing] in covering up the misdeeds of agents and/or employees of" certain of the defendants. (*Id.* ¶¶ 151, 182-83.)

Specifically, the DA allegedly "has openly and aggressively pursued a high conviction rate at the expense of individual civil liberties, often citing the cooperation received by defendants" including the County, the Commissioner, and the Sheriff. (*Id.* ¶ 185.)

### B. Procedural History

Plaintiffs filed the complaint in this action on March 25, 2006. Judge Leonard D. Wexler was assigned the case. On July 31, 2006, defendants answered the complaint and moved to disqualify plaintiffs' counsel due to an alleged conflict of interest.

On September 5, 2006, the case was reassigned to the undersigned. On January 30, 2007, the Court granted defendants' motion to disqualify plaintiffs' counsel. Defendants amended their answer on March 26, 2007. Plaintiffs' new counsel filed a notice of appearance on May 4, 2007. Defendants filed the instant motion on June 14, 2007. Plaintiffs filed their response on July 24, 2007. Defendants filed their reply on August 1, 2007. The Court held oral argument on December 7, 2007.

### C. Standard of Review

Courts evaluate a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) under the same standard as a motion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. *Nicholas v. Goord*, 430 F.3d 652, 658 n.8 (2d Cir. 2005).[4]

In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy "a flexible 'plausibility' standard, which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the

---

[4] While defendants did not also move for dismissal under Rule 8 of the Federal Rules of Civil Procedure, counsel for defendants contended at oral argument that the complaint does not meet Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Court rejects this argument. While the complaint is long, it provides "fair notice" of the basis for plaintiffs' claims. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation and quotation marks omitted). *See, e.g., Shyshko v. County of Monroe*, No. 07-CV-6122, 2007 U.S. Dist. LEXIS 50554, at *7 (W.D.N.Y. July 12, 2007) (denying motion for dismissal under Rule 8 where "complaint, although lengthy, owing to the number of parties and the number of claims, is not confusing, ambiguous, vague, or unintelligible").

complaint." *Bell Atlantic*, 127 S. Ct. at 1974. The Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.*

Further, in reviewing a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Here, defendants ask the Court to "take judicial notice" of – and thus consider for purposes of this motion – several exhibits appended to their motion papers, including documents filed in other courts and police reports. (Defs.' Reply at 2.) However, with respect to non-judicial documents, the Court declines to do so. "[A] ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact." *Roth*, 489 F.3d at 509. Short of converting this motion to a motion for summary judgment under Fed. R. Civ. P. 56, which would be premature in this case given the lack of discovery, the Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] *solely* relies and . . . is *integral to the complaint*." *Id.* at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphases in original). Courts also "'routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" *Crews v. County of Nassau*, No. 06-CV-2610 (JFB), 2007 U.S. Dist. LEXIS 6572, at *5 n.2 (E.D.N.Y. Jan. 30, 2007) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). However, with respect to the non-judicial documents (such as police reports), defendants do not argue – and the Court has not determined – that defendants' exhibits fall within these exceptions.

Consequently, the Court will not consider such exhibits for the purposes of this motion, unless these exhibits were also appended to plaintiffs' complaint.[5]

## II. PLAINTIFFS' CLAIMS UNDER SECTIONS 1983[6]

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). "Claims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (false arrest) and citing *Conway v. Vill. of Mount Kisco*, 750 F.2d 205, 214 (2d Cir. 1984 (malicious prosecution)).

---

[5] In addition, counsel for plaintiffs agreed at oral argument that they were not moving to convert the motion for judgment on the pleadings to a motion for summary judgment, and conceded that the Court was not permitted to take judicial notice of documents not appended to the complaint that did not also fall within the court documents exception set forth above.

[6] While plaintiffs' conspiracy claims are brought in part under Section 1983, the Court considers these in a separate section, *infra*.

## A. False Arrest and False Imprisonment

Defendants move to dismiss the false arrest and false imprisonment claims against them on the grounds that Crews was arrested for probable cause. For the reasons set forth below, the Court denies defendants' motion to dismiss these causes of action.

In New York, the claim colloquially known as "false arrest" is a variant of the tort of false imprisonment, and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context. *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). To prevail, a plaintiff must prove four elements: "(1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not contest the confinement; and (4) the confinement was not otherwise privileged." *Broughton v. New York*, 37 N.Y.2d 451, 456 (N.Y. 1975), *cert. denied*, 423 U.S. 929 (1975).[7] In the instant case, only the final

element is in dispute. Defendants argue that the arrest was privileged as a matter of law because it was supported by probable cause; the Second Circuit has established that "[t]he existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest'. . . ." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant*, 101 F.3d at 852 (internal citations omitted)).

"In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852. Further, the "validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). "Rather, the court looks only to the information the arresting officer had at the time of the arrest." *Peterson*, 995 F. Supp at 313 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Under the collective knowledge doctrine, if one law enforcement officer had probable cause to arrest, cooperating law enforcement officers are deemed to have probable cause as well. *Savino v. City of New York*, 331 F.3d 63, 74 (2d Cir. 2003) ("The collective knowledge doctrine provides that, for the purpose of determining whether an arresting officer had probable cause to arrest, 'where law enforcement authorities are cooperating in an investigation, . . . the knowledge of one is presumed shared by all.'" (quoting *Illinois v. Andreas*, 463 U.S. 765, 772 n.5 (1983)). Moreover, on a motion to dismiss, the "question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events

---

[7] Moreover, even if a police officer does not personally participate in such a constitutional violation, but witnesses such a violation by other officers, that witnessing officer may be liable for failing to intercede to prevent the constitutional violations of the other officers where the officer had reason to know such a violation was occurring and had a realistic opportunity to intercede. *See Provost v. City of Newburgh*, 262 F.3d 146, 168 (2d Cir. 2001) ("'It is widely-recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.'") (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)); *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know it will be."); *accord O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988).

and the knowledge of the officers." *Weyant*, 101 F.3d at 852.

Defendants argue that the police had probable cause to arrest Crews by relying on Defendants' Exhibits A through D,[8] which were appended to defendants' motion papers and are police reports. (Def.'s Mem. at 16-18.) For the reasons set forth *supra*, however, the Court will only consider those exhibits that were also appended to plaintiffs' complaint. Of these latter exhibits, only Exhibit C (plaintiffs' Exhibit 8) relates substantively to the question of probable cause. Specifically, plaintiffs' Exhibit 8 includes the Supporting Deposition of an alleged victim of the robbery for which Crews was arrested. (Plaintiffs' Exh. 8 at 6.) The Supporting Deposition, dated May 26, 2005 – one day prior to Crews's arrest – indicates that the victim identified Crews in a photo array as one of the robbers. (*Id.*)

The Court is aware that "positive identification" of a suspect in a photo array gives rise to probable cause for arrest as long as it is reasonable to believe that the witness is telling the truth. *Russo v. City of Bridgeport*, No. 05-4302-cv, 2007 U.S. App. LEXIS 16171, at *15-*16 (2d Cir. Feb. 27, 2007); *see also Rodriguez v. New York*, No. 95 Civ. 3639, 1996 U.S. Dist. LEXIS 5353, at *7-*8 (S.D.N.Y. Apr. 23, 1996) ("[T]he identification of an individual as the perpetrator of a crime by a putative victim of, or eyewitness to, the crime is in itself sufficient to establish probable cause, as long as it is reasonable to believe that the putative victim or eyewitness is telling the truth."). Here, however,

plaintiffs have alleged facts sufficient to call into question whether defendants had probable cause to arrest Crews even in light of the photo array. Specifically, plaintiffs allege that ADA Higgins, the Commissioner, the Sheriff, the DA, and other named defendants knew prior to the June 9 Conference not only that the actual date of the robbery was March 26, 2005, but also that Crews "had no involvement with" this robbery. (Compl. ¶ 83.) The complaint further alleges that the Commissioner, the Sheriff, the DA's Office, and the DA, in addition to other named defendants, knowingly filed the Felony Complaint containing the wrong date. (*Id.* ¶ 68.) In addition, it is alleged that accomplice Hughlett stated prior to Crews's arrest that Crews did not commit the robbery. (*Id.* ¶ 65.) Taken together, these allegations plausibly support a claim that defendants knew prior to Crews's arrest that he was not involved with the robbery and that the victim's identification of Crews was erroneous.

Accordingly, after carefully reviewing the complaint and drawing all inferences in plaintiffs' favor from the facts alleged therein, the Court cannot conclude at this juncture, as a matter of law, that defendants had probable cause to arrest or confine Crews. *See Mitchell v. Cty. of Nassau*, No. CV-05-4957, 2007 U.S. Dist. LEXIS 38711, at *36 (E.D.N.Y. May 24, 2007) ("[P]laintiff . . . alleges that [defendant] intentionally and maliciously filed an unsubstantiated criminal complaint against her without adequate investigation together with a supporting deposition in which he urged her arrest. . . . Accordingly, at the pleadings stage, the amended complaint arguably states a claim for false arrest. . . ."); *Caidor v. M&T Bank Corp.*, No. 5:05-CV-297, 2006 U.S. Dist. LEXIS 22980, at *19 (N.D.N.Y. Mar. 27, 2006) (denying motion to dismiss false arrest claim where "[i]t is . . . impossible to derive from the complaint exactly what information

---

[8] While defendants also rely on Exhibit F, which is a judicial document of which the Court may take notice for purposes of defendants' motion, this exhibit is dated July 18, 2005 – approximately three months after Crews's arrest. Thus, Exhibit F is irrelevant to the question of probable cause for this arrest.

was available to the officers . . . at the time of Plaintiff's arrest. . . .").

## B. Malicious Prosecution

Defendants argue that the Court should dismiss plaintiffs' malicious prosecution claim because police had probable cause to arrest Crews and because defendants did not act with actual malice. For the reasons set forth below, the Court disagrees and denies defendants' motion to dismiss this cause of action.

"'Because there are no federal rules of decision for adjudicating § 1983 actions that are based upon claims of malicious prosecution, [courts] are required by 42 U.S.C. § 1988 to turn to state law . . . for such rules.'" *Alicea v. City of New York*, No. 04-CV-1243, 2005 U.S. Dist. LEXIS 28129, at *17 (S.D.N.Y. Nov. 15, 2005) (quoting *Conway v. Mt. Kisco*, 750 F.2d 205, 214 (2d Cir. 1984)). "A malicious prosecution claim under New York law requires the plaintiff to prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Blake v. Race*, 487 F. Supp. 2d 187, 211 (E.D.N.Y. 2007) (quoting *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003)) (internal quotation marks omitted).

In the instant case, only the final two elements are in dispute. First, as discussed *supra*, the Court is unable to determine at this juncture, as a matter of law, that the police had probable cause to arrest and confine Crews. However, even if Crews's arrest were supported by probable cause, plaintiffs have alleged facts putting into question whether Crews's continued prosecution was similarly supported. As the Second Circuit has held,

> Under New York law, even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause. . . . In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact. . . . The New York Court of Appeals has noted that the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause."

*Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996) (citations and quotation marks omitted); *see also Korthas v. City of Auburn*, No. 5:04-CV0537, 2006 U.S. Dist. LEXIS 38745, at *15 (N.D.N.Y. June 9, 2006) ("Police officers may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause . . . [A] failure to make further inquiry when a reasonable person would have done so may evidence a lack of probable cause.") (citation and quotation marks omitted). Here, plaintiffs allege that defendants knew, at the very latest by the time of the June 9 Conference, that Crews was not involved with the robbery. Plaintiffs also allege that defendants continued to prosecute Crews after learning at the June 9 Conference that Crews had an alibi for April 26, 2005, and after learning on August 17, 2005 that Crews had an alibi for March 26, 2005. In addition, plaintiffs allege that defendants did not sufficiently investigate these alibis. Even if probable cause existed at the time of Crews's arrest, plaintiffs have alleged facts sufficient to put into question whether probable cause continued to exist after

this arrest given the information that the defendants allegedly had in their possession regarding Crews's innocence.[9]

Second, because the Court is unable to determine at this juncture whether Crews's prosecution was based on probable cause, the Court is also unable to determine whether defendants acted with actual malice. "In most cases, the lack of probable cause – while not dispositive – 'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'" *Lowth*, 82 F.3d at 573 (quoting *Conkey v. State*, 427 N.Y.S.2d 330, 332 (N.Y. 1980); *see also Cunninham v. New York City*, No. 04 Civ. 10232, 2007 U.S. Dist. LEXIS 69801, at *15-*16 (S.D.N.Y. Sept. 18, 2007) (same) (quoting

_____

[9] For the same reasons, that a grand jury indicted Crews does not change the Court's conclusion that probable cause for Crews's continued prosecution remains in question at this juncture. The Court is aware that a grand jury indictment gives rise to a presumption of probable cause. *See Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994). However, a showing of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith" can overcome this presumption. *Id.*; *see also Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 421 (S.D.N.Y. 2002) ("An indictment by a grand jury creates a presumption of probable cause that can only be overcome by establishing that the indictment itself was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'") (quoting *Bernard*, 25 F.3d at 104). According to the complaint, the grand jury indicted Crews after defendants knew that he was not involved in the robbery and as a result of defendants' perjury. This allegation, taken as true for purposes of this motion, defeats any presumption of probable cause that the grand jury indictment might otherwise afford. The Court thus cannot, for purposes of this motion to dismiss, rely on this indictment to infer probable cause for Crews's prosecution.

*Lowth*); *Mesiti v. Wegman*, 307 A.D.2d 339, 341 (2d Dep't 2003) ("[T]he jury was able to infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.") Here, because the existence of probable cause remains in question, the existence of actual malice does as well. Moreover, plaintiffs have alleged direct evidence of actual malice in addition to the circumstantial evidence of malice that could arise from the lack of probable cause. As discussed *supra*, plaintiffs allege that the Commissioner, the Sheriff, and the DA, in addition to other named defendants, knowingly filed the Felony Complaint containing the wrong date, and continued prosecuting Crews knowing he was innocent, at least by the time of the June 9 Conference. This alleged direct evidence of actual malice also forecloses the Court from dismissing plaintiffs' malicious prosecution claim at this stage of the litigation.

### C. Municipal Liability

Defendants move to dismiss the claim of municipal liability against Nassau County on the grounds that this claim is merely conclusory and does not make a showing of such liability with the requisite specificity. For the reasons set forth below, the Court disagrees with defendants and denies their motion to dismiss this claim at this juncture.

The Supreme Court expressly rejected liability pursuant to a theory of *respondeat superior* for purposes of § 1983 in *Monell*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Thus, "[a] municipality will not be held liable under § 1983 unless plaintiffs can demonstrate that the allegedly

unconstitutional action of an individual law enforcement official was taken pursuant to a policy or custom officially adopted and promulgated by that [municipality's] officers." *Abreu v. City of New York*, No. 04-CV-1721, 2006 U.S. Dist. LEXIS 6505, at *11 (E.D.N.Y. Feb. 22, 2006) (quotation marks omitted) (citing *Monell*, 436 U.S. at 690). "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives" by the municipality's lawmakers. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-84 (1986)). An individual's misconduct will not result in *respondeat superior* liability for his supervisors absent specific allegations that he acted pursuant to an official policy or custom. *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). In particular, "'the mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).

The Court finds, however, that plaintiffs have alleged facts specific enough to make a plausible claim for municipal liability. While the Court agrees that the conclusory allegation that "it is well known within the minority community" that defendants have unconstitutional policies regarding minorities is more of a recounting of rumor than particularized evidence of municipal liability, plaintiffs also specifically allege that the County and other of the defendants "have had numerous state and federal civil rights suits filed against them," and have settled many such suits for, *inter alia*, defendants' deprivation of the civil liberties of various individuals, policies toward minorities, and the prosecution of innocent persons. (Compl. ¶¶ 105, 152, 153,

185.) The Court is aware that at the summary judgment stage, "the mere fact of other lawsuits against the [County] does not provide a basis for liability," *Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 311 (S.D.N.Y. 1998); *see also, e.g., Peters v. City of Biloxi*, 57 F. Supp. 2d 366, 378 (S.D. Miss. 1999) (stating that "mere fact that other lawsuits have been filed against the [defendant municipality] does not provide a basis for municipal liability"), and the settlement of such lawsuits may be equally insufficient evidence of municipal liability to defeat summary judgment. However, at this motion to dismiss stage, this allegation, in conjunction with the other allegations, is sufficient to avoid dismissal. In particular, plaintiffs also allege that defendants "have repeatedly failed to adequately train and supervise their respective agents/employees to assure that they would not promote or condone perjury and/or assist in the prosecution of innocent persons." (Compl. ¶ 151.) In short, given this series of allegations, in the context of the entire complaint, plaintiffs' claim of municipal liability survives defendants' motion to dismiss and defendants' motion to dismiss this claim is denied.[10]

---

[10] Defendants also argue that the claims against the County Supervisors – namely, defendants Lawrence, Bishop, Haviken, Mack, Monette, Crawford, Faust, Tully, O'Connor, Fal, Barbieri, Reilly, Dillon, and McCarthy – must fail because plaintiffs failed to allege personal involvement in the alleged deprivation of plaintiffs' constitutional rights. As set forth below, the Court disagrees and finds such claims survive a motion to dismiss.

The Second Circuit has repeatedly held that, when supervisory liability is alleged, the requisite personal involvement can be demonstrated in one or more of the following manners:

(1) the defendant participated directly in the alleged

### D. Abuse of Process

Defendant moves to dismiss plaintiffs' claim for abuse of process under Section 1983 on the grounds that plaintiffs fail to allege that the defendants employed the criminal justice system against Crews for an objective outside the

> constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir. 1986)); *accord Hayut v. State University of New York,* 352 F.3d 733, 753 (2d Cir. 2003). Throughout the complaint, plaintiff alleges that these supervisory defendants were personally involved in the decisions related to his arrest and prosecution and had knowledge of the allegedly unlawful actions of their subordinates. (*See, e.g.,* Compl. ¶ 180 ("A.D.A. Madey informed counsel that all decisions regarding the case had been made at the highest level and that due to the fact that defendant DA had been directly and personally involved in all decisions regarding [Crews's] criminal matter, A.D.A. Madey had no discretion as to the disposition of [Crews's] case.").) Although the allegations do not contain the details of any such involvement, these claims are sufficiently pled to survive at the motion to dismiss stage. *See, e.g., Evac v. Pataki,* 89 F. Supp. 2d 250, 255 (N.D.N.Y. 2000) (holding allegations of personal involvement of supervisors sufficient to satisfy motion to dismiss standard).

legitimate ends of the process. For the reasons set forth below, the Court agrees with the defendants and dismisses this cause of action.

In order to establish liability for malicious abuse of process under Section 1983, a plaintiff must establish the claim's elements under state law. *See Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir. 1994). A plaintiff may assert a malicious abuse of process claim where a defendant: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York,* 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook,* 41 F.3d at 80). Here, plaintiffs' abuse of process claim fails because they have not alleged that defendants aimed to achieve an objective collateral to Crews's prosecution and conviction. *Savino,* 331 F.3d at 77 ("[T]o state a claim for abuse of criminal process. . . . [plaintiff] must claim that [defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.").

In support of their abuse of process claim, plaintiffs allege that defendants "employed regularly issued criminal process against [Crews] . . . to obtain the collateral objective of securing an unlawful indictment and then covering up the prior unlawful actions of their agents and/or employees." (*Compl.* ¶ 392-93.) However, in evaluating such claims, the Second Circuit expressly distinguishes between a "malicious motive" and an "improper purpose"; only the latter suffices to meet the "collateral objective" prong of the abuse of process standard. *See Savino,* 331 F.3d at 77 ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action. . . . '[I]mproper motive is not

enough.'") (emphasis in original) (quoting *Dean v. Kochendorfer*, 237 N.Y. 384 (1924)); *see also Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (N.Y. 1984) ("A malicious motive alone . . . does not give rise to a cause of action for abuse of process."); *Roeder v. Rogers*, 206 F. Supp. 2d 406, 414 (W.D.N.Y. 2002) (dismissing abuse of process claim on summary judgment because "malicious motive, without more, does not give rise to [such] a cause of action") (citation and quotation marks omitted). Because plaintiffs have merely alleged that defendants were motivated by their desire to cover up their misdeeds, but not that defendants had a purpose other than to prosecute Crews, the abuse of process claim fails. *See Pierre-Antoine v. City of New York*, No. 04-CV-6987, 2006 U.S. Dist. LEXIS 28963, at *8 (S.D.N.Y. May 9, 2006) (dismissing plaintiffs' abuse of process claim based on failure to allege or provide evidence of collateral purpose outside legitimate ends of process); *see also Brewster v. Nassau Cty.*, 349 F. Supp. 2d 540, 550 (E.D.N.Y. 2004) (same).

## IV. CONSPIRACY

Defendants argue for dismissal of plaintiffs' conspiracy claims under Section 1983 and 42 U.S.C. § 1985 on the basis of the intracorporate conspiracy doctrine. For the reasons set forth below, the Court agrees and dismisses plaintiffs' conspiracy claims on the basis of this doctrine.[11]

The intracorporate conspiracy doctrine posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other. *See, e.g., Farbstein v. Hicksville Pub. Library*, No. 06-0907-cv, 2007 U.S. App. LEXIS 26491, at *3-*4 (2d Cir. Nov. 15, 2007) (affirming dismissal of conspiracy complaint "at the first step of analysis" because complaint made reference only to employees of same corporation) (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978)); *Herrmann*, 576 F.2d at 459 ("[T]here is no conspiracy [under Section 1985] if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own . . . officers[] and employees, each acting within the scope of his employment."); *Cameron v. Church*, 253 F. Supp. 2d 611, 623 (S.D.N.Y. 2003); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 359-60 (E.D.N.Y. 1999); *Rini v. Zwirn*, 886 F. Supp. 270, 292 (E.D.N.Y. 1995) ("Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees.").[12] Here, plaintiffs do not dispute

---

[11] Because the Court dismisses the conspiracy claims on the basis of the intra-corporate conspiracy doctrine, the Court need not address defendants' argument that these claims should be dismissed because the allegations of conspiracy are merely conclusory. *See, e.g., Salgado v. City of New York*, No. 00 Civ. 3667, 2001 U.S. Dist. LEXIS 3196, at *24-*25 (S.D.N.Y. Mar. 26, 2001) (granting motion to dismiss Section 1983 conspiracy claim where pleading "merely states the legal standard [for the personal stake exception] without alleging specific facts giving rise to an inference that the standard has

---

been satisfied").

[12] Plaintiffs cite *Volk v. Coler*, 845 F.2d 1422, 1434-35 (7th Cir. 1988), for the proposition that "§ 1985(3) may apply to intra-entity conspiracies, even if employees acted within scope of authority." (*See* Pls.'s Opp. at 23.) As a threshold matter, plaintiffs mistakenly cite this Seventh Circuit case as a Second Circuit holding. (*Id.*) In any case, the Court rejects plaintiffs' argument because the Second Circuit has not cited *Volk* for the proposition plaintiffs claim and, as explained *supra*, has held to the contrary. The Court further notes that the other case plaintiffs cite to negate the applicability of the intracorporate conspiracy doctrine, *Cross v. Gen. Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir. 1983), is also not, as plaintiffs

that defendants are all employees of a single municipal entity – Nassau County. Instead, plaintiffs argue that defendants were acting outside of the scope of their employment by failing to investigate Crews's alleged crime and imposing false charges against him. (Pls.'s Opp. at 24 (citing Compl. ¶ 368).) However, to show that defendants acted outside the scope of their employment, a plaintiff must show that defendants were "acting in their personal interests, wholly and separately from the corporation" or municipal entity. *Bhatia v. Yale Univ.*, No. 3:06cv1769, 2007 U.S. Dist. LEXIS 73849, at *4-*5 (D. Conn. Sept. 30, 2007) (citing *Tardd v. Brookhaven Nat'l Lab*, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006)); *see also Little v. City of New York*, 487 F. Supp. 2d 426, 442 (S.D.N.Y. 2007) (dismissing conspiracy claims under Sections 1983 and 1985 under intracorporate conspiracy doctrine where plaintiff "does not provide any evidence to suggest that [defendants] were motivated by an independent personal stake in his arrest and prosecution"). The Court has carefully reviewed the Complaint, including the paragraph plaintiffs highlight to argue that defendants should be exempt from the intracorporate conspiracy doctrine, and finds that plaintiffs have failed to allege that defendants were acting solely in their personal interests, separate and apart from their duties to arrest and prosecute suspected criminals. Thus, the Court dismisses the claims of conspiracy under Sections 1983 and 1985.[13]

IV. IMMUNITY

A. Absolute Immunity

Defendants argue that the Court should dismiss plaintiffs' claims against the DA and ADAs Lampert, McCarthy, and Madey (the "defendant prosecutors") on the ground of absolute immunity. For the reasons set forth below, although the defendant prosecutors are entitled to absolute immunity for non-investigatory acts, the Court cannot dismiss the claims in their entirety against the defendant prosecutors because, as conceded at oral argument by counsel for defendants, there are investigative acts by the defendant prosecutors alleged in the complaint that are not protected by absolute immunity.

"'It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil

_____

mistakenly suggest, a Second Circuit holding. (*See* Pls' Opp. at 23.) *Cross*, however, merely states the general standard for the doctrine also adopted by the Second Circuit and, thus, does not affect the Court's analysis.

[13] Defendants also move to dismiss plaintiffs' claim for failure to intervene under Section 1986 on the grounds that plaintiffs' claims fail under Sections 1983 and 1985. As discussed below, the Court agrees with defendants because plaintiffs' claim fails under

Section 1985. "Section 1986 provides a cause of action against anyone who 'having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Thomas v. Roach*, 165 F.3d 137, 147 (2d 1999) (citation and quotation marks omitted). However, Section 1985 liability is a necessary predicate to a Section 1986 claim. *See Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000); *see also Posr v. Court Officer Shield # 207*, 180 F.3d 409, 419 (2d Cir. 1999) (affirming dismissal of Section 1986 claim where district court also dismissed Section 1985 claim). Here, because the Court dismisses plaintiffs' conspiracy claims under Sections 1983 and 1985 for the reasons discussed *supra*, the Court must also dismiss plaintiffs' claims under Section 1986. *See, e.g., O'Bradovich v. McGuire*, 325 F. Supp. 2d 413, 426-27 (S.D.N.Y. 2004) ("Plaintiffs' inability to state a claim for conspiracy under § 1985 is, in turn, fatal to their § 1986 claim. . . .").

suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 431 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery. . . . This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.'" *Deronette v. City of New York*, No. 05-CV-5275, 2007 U.S. Dist. LEXIS 21766, at *12 (E.D.N.Y. Mar. 27, 2007) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and quoting *Imbler*, 424 U.S. at 419 n.13). However, the Second Circuit has held that in the context of a motion to dismiss under Rule 12(b)(6), "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Hill v. City of New York*, 45 F.3d 653, 663 (2d Cir. 1995).

"In determining whether absolute immunity obtains, we apply a 'functional approach,' looking to the function being performed rather than to the office or identity of the defendant." *Hill*, 45 F.3d at 660 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). In applying this functional approach, the Second Circuit has held that prosecutors are entitled to absolute immunity for conduct "'intimately associated with the judicial phase of the criminal process.'" *Fielding v. Tollaksen*, No. 06-5393-cv, 2007 U.S. App. LEXIS 28939, at *3-*4 (2d Cir. Dec. 12, 2007) (quoting *Imbler*, 424 U.S. at 430) Hill, 45 F.3d at 661 (same). In particular, "[s]uch immunity . . . extends to 'acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur

in the course of his role as advocate for the State." *Smith v. Bodak*, 147 F.3d 91, 94 (2d Cir. 1998). On the other hand, "[w]hen a district attorney functions outside his or her role as an advocate for the People, the shield of immunity is absent. Immunity does not protect those acts a prosecutor performs in administration or investigation not undertaken in preparation for judicial proceedings." *Hill*, 45 F.3d at 661; *see also Carbajal v. County of Nassau*, 271 F. Supp. 2d 415, 421 (E.D.N.Y. 2003) ("[W]hen a prosecutor supervises, conducts, or assists in the investigation of a crime, or gives advice as to the existence of probable cause to make a warrantless arrest – that is, when he performs functions normally associated with a police investigation – he loses his absolute protection from liability.").

The Second Circuit has noted that [t]he line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw." *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000). The Court, however, may rely on certain established distinctions between these roles. For example, the Supreme Court "has identified 'evaluating evidence and interviewing witnesses' as falling on the absolute immunity side of the line, leaving 'searching for clues and corroboration' that might lead to a recommendation for an arrest on the qualified immunity side." *Smith*, 147 F.3d at 94 (quoting *Buckley*, 509 U.S. at 273). Further, the Second Circuit has specifically identified the juncture in the criminal process before which absolute immunity may not apply: "The majority opinion in [*Buckley*] suggests that a prosecutor's conduct prior to the establishment of probable cause should be considered investigative: 'A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone

arrested.'" *Zahrey*, 221 F.3d at 347 n.2 (quoting *Buckley*, 509 U.S. at 274); *see also Hill*, 45 F.3d at 661 ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts."). However, the Supreme Court has also held that "a determination of probable cause does not guarantee a prosecutor absolute immunity for all actions taken afterwards. Even after that determination . . . a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity." *Buckley*, 509 U.S. at 274 n.5; *see Zahrey*, 221 F.3d at 347 n.2 ("All members of the Court [in *Buckley*] recognized . . . that a prosecutor's conduct even after probable cause exists might be investigative."). For instance, in interpreting *Buckley*, the Second Circuit has distinguished between "preparing for the presentation of an existing case" and attempting to "furnish evidence on which a prosecution could be based," *Smith*, 147 F.3d at 94; only the former entitles a prosecutor to absolute immunity. *Id.*

Moreover, once a court determines that a prosecutor was acting as an advocate, "a defendant's motivation in performing such advocative functions as deciding to prosecute is irrelevant to the applicability of absolute immunity." *Shmueli*, 424 F.3d at 237 (quoting *Bernard*, 356 F.3d at 502); *see also Kleinman v. Multnomah Cty.*, No. 03-1723-KI, 2004 U.S. Dist. LEXIS 21466, at *18 (D. Or. Oct. 15, 2004) ("The Ninth Circuit has interpreted *Imbler* to support absolute prosecutorial immunity even when a plaintiff alleges that the prosecutor went forward with a prosecution he believed not to be supported by probable cause.").

In the instant case, plaintiffs make certain allegations for which defendant prosecutors are clearly entitled to absolute immunity under the standards set forth above. First, prosecutor defendants are entitled to absolute immunity for any failure to investigate Crews's alibis at the behest of his attorney or otherwise. "To hold otherwise would be to fashion a rule that would allow defense counsel to defeat absolute immunity by initiating a meeting with the prosecutor and asking the prosecutor to review the case with an eye toward dismissal of the charges. Such a rule has no support in the law and will not be countenanced here." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1267 (8th Cir. 1996) (finding prosecutor's review of polygraph results presented by defense counsel covered by absolute immunity); *see also Marczeski v. Handy*, 213 F. Supp. 2d 135, 141 (D. Conn. 2002) (holding that "claims based on an alleged failure to investigate c[o]me within the absolute immunity afforded by *Imbler*) (collecting cases); *Woolfolk v. Thomas*, 725 F. Supp. 1281, 1283 (N.D.N.Y. 1989) ("In this court's opinion the decision *not* to investigate is sufficiently closely related to the decision *not* to prosecute so as to qualify defendant [prosecutor]'s decision for absolute immunity.") (quotation marks omitted). Second, the prosecutor defendants are protected by absolute immunity for any alleged withholding of exculpatory material from, or taking of false testimony before, the County Court or the grand jury. The Second Circuit has specifically held that "[a] prosecutor is . . . entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.'" *Shmueli*, 424 F.3d at 237 (quoting *Imbler*, 424 U.S. at 431 n.34); *Sanders v. N.Y. City Police Dep't*, Nos. 07cv3993, 07cv4092, 2007 U.S. Dist. LEXIS 91484, at *9 n.2 (E.D.N.Y. Dec. 12, 2007) (same); *Volpe v. Rabah*, No. 07-CV-2721,

2007 U.S. Dist. LEXIS 52812, at *6 (E.D.N.Y. July 20, 2007) (same).[14]

However, as counsel for defendants conceded at oral argument, plaintiffs also allege certain conduct that the protection of absolute immunity does not reach.[15] The Court agrees. Specifically, plaintiffs allege that prosecutor defendants, "[a]cting in a non-judicial and investigatory function . . . were involved in the supervision of key aspects of investigations relating to the crime for which [Crews] was charged," (Compl. ¶ 80), both prior and subsequent to his arrest, and continued to prosecute him knowing that he was innocent.[16] Absolute immunity does not protect such alleged misconduct that took place in the course of participation in and supervision of criminal investigations. *See McCray v. City of New York*, Nos. 03 Civ. 9685, 03 Civ. 9974, 03 Civ. 10080, 2007 U.S. Dist. LEXIS 90875, at *59 (S.D.N.Y. Dec. 11, 2007) ("[I]f a prosecutor acts in an investigative capacity, for example; or gives police legal advice on the propriety of investigative techniques and on whether or not probable cause exists to make an arrest . . . then absolute immunity cannot be invoked.") (citing *Buckley*, 509 U.S. at 270-71); *Thompson v. Gentz*, No. 06-CV-1743, 2007 U.S. Dist. LEXIS 29753, at *4-*5 (E.D.N.Y. Apr. 23, 2007) (vacating prior order granting absolute immunity to prosecutor in part because "prosecutor [was] not entitled to absolute immunity when supervising and interacting with law enforcement agencies in acquiring evidence that might be used in a prosecution") (citing *Barbera v. Smith*, 836 F.2d 96, 100 (2d Cir. 1987)); *Hickey v. City of New York*, 01 Civ. 6506, 2002 U.S. Dist. LEXIS 15944, at *10-*11 (S.D.N.Y. 2002) (denying absolute immunity to prosecutors because "[p]articipating in an arrest and detention clearly is not part of the traditional advocacy functions of a prosecutor. . . . And so the courts have held – denying absolute immunity for participation in illegal arrests, even when the participation was the lawyerly function of giving legal advice about the propriety of an arrest"); *Russo v. City of Hartford*, 158 F. Supp. 2d 214, 231 (D. Conn. 2001) (denying absolute immunity to prosecutors who, *inter alia*, allegedly

---

[14] Although counsel for plaintiffs conceded at oral argument that absolute immunity covers defendants' alleged failure to investigate Crews's alibi and to turn over exculpatory information, counsel also argued that such conduct could be admissible at trial as evidence of defendants' motive on the investigatory aspects of plaintiffs' claims (discussed *infra*) that survive. The Court need not address this evidentiary issue at the present juncture.

[15] The Court notes, as a threshold matter, that plaintiffs' labeling various actions "investigative" or "administrative" in the complaint is of no moment. *See Wilson v. Barcella*, No. H-05-3646, 2007 U.S. Dist. LEXIS 22934, at *59 (S.D. Tex. Mar. 29, 2007) ("[T]he use of labels in the complaint, such as "investigative" or "administrative," as opposed to "advocacy," [does not] resolve the immunity issue."); *Belot v. Wieshaupt*, No. 96. Civ. 3005, 1997 U.S. Dist. LEXIS 5772, at *21 (S.D.N.Y. 1997) ("[I]t is not enough for plaintiff to allege simply that defendants 'performed investigative functions' or that they were 'involved' in the criminal investigation, plaintiff must also identify wrongdoing by defendants in their investigative capacity."). The key inquiry the Court has undertaken in determining whether absolute immunity applies is whether the defendant prosecutors' alleged wrongdoing took place in the course of "administration or investigation not undertaken in preparation for judicial proceedings." *Hill*, 45 F.3d at 661.

[16] For instance, the Complaint alleges that defendant prosecutors were acting in this investigatory capacity when they allegedly attempted to coerce Hughlett's confession prior to Crews's arrest, and Crews's and Miller's confessions after this arrest.

19

"continued to pursue the illegal criminal investigation of the Plaintiff") (quotation marks omitted); *Amaker v. Coombe*, 96 Civ. 1622, 1998 U.S. Dist. LEXIS 14523, at *21 (S.D.N.Y. Sept. 16, 1998) (denying absolute immunity to prosecutor who "provide[d] legal advice to the police" during investigation); *see also Mink v. Suthers*, 482 F.3d 1244, 1260 (10th Cir. 2007) (holding that "[a]dvising police on interrogation methods or the existence of probable cause does not qualify" prosecutors for absolute immunity) (citation and quotation marks omitted); *Genzler v. Longanbach*, 410 F.3d 630, 641 (9th Cir. 2005), *cert. denied*, 2005 U.S. LEXIS 8597 (Nov. 28, 2005) (denying absolute immunity to prosecutors who were "actively directing police-type investigative actions," including witness interviews); *Kittler v. City of Chicago*, No. 03 C 6992, 2004 U.S. Dist. LEXIS 14797, at *19-*20 (N.D. Ill. July 27, 2004) (denying absolute immunity to prosecutor at motion to dismiss stage because court "could not find at this juncture that there was no possibility based on the allegations that [prosecutor] did not participate in the interrogation of [plaintiff] in an investigative capacity"); *Williams v. Valtierra*, No. 00 C 5734, 2001 U.S. Dist. LEXIS 8460, at *10 (N.D. Ill. June 18, 2001) ("[T]his court declines to hold that prosecutors can join coercive interrogations as active participants and be absolutely shielded from civil liability.").[17]

In sum, although the Court is sensitive that the availability of absolute immunity should be decided at the earliest possible juncture, the Court declines to rule as a matter of law at this stage, given the allegations of investigative misconduct in the complaint, that absolute immunity shields defendant prosecutors from any alleged misconduct that took place during the investigation of Crews's involvement in the robbery.[18]

## B. Qualified Immunity

Defendants also argue that they are entitled to dismissal on the grounds of qualified immunity. As set forth below, the Court concludes that the complaint does not provide a sufficient basis at this juncture for the Court to determine whether defendants are entitled to qualified immunity. Again, the motion to dismiss on such grounds is denied without prejudice to renew such motion at the summary judgment stage.

According to the Second Circuit, government actors may be shielded from liability for civil damages if their "conduct did not violate plaintiff's clearly established rights,

---

[17] The Court is aware that absolute immunity covers defendant prosecutors' alleged conspiracy to present perjured testimony to the County Court or the Grand Jury. *See Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (holding that absolute immunity protects prosecutors from allegations that they "conspiring to present false evidence at a criminal trial"); *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1148 (2d Cir. 1995) ("[T]ry as he might, Pinaud's attempt to avoid the defense of absolute prosecutorial immunity by fashioning his claim in terms of a conspiracy based only on actions taken outside the courtroom does not avail.") However, again, for the reasons stated *supra*,

any investigative misconduct by defendant prosecutors, whether or not performed in alleged furtherance of a conspiracy, is not covered by this immunity. *See Bernard*, 356 F.3d at 507 ("[I]t is undisputed that absolute immunity cannot support dismissal of a properly pleaded claim for investigative misconduct."); *cf. Belot*, 1997 U.S. Dist. LEXIS 5772 at *21 (granting absolute immunity where "[p]laintiff has failed to identify any investigative misconduct on the part of defendant [prosecutor]").

[18] Further, for the reasons set forth *infra*, the Court has determined that defendant prosecutors are not entitled to qualified immunity for this investigatory conduct as well.

or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. County of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding*, 2007 U.S. App. LEXIS 28939, at *4 ("The police officers, in turn, are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotation marks omitted)). Thus, as with absolute immunity, qualified immunity is not merely a defense, but rather is also "an entitlement not to stand trial or face the other burdens of litigation." *Forsyth*, 472 U.S. at 526. Accordingly, as with absolute immunity, courts should determine the availability of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

Further, the Second Circuit has emphasized that "a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna*, 386 F.3d at 436; *see also McCray*, 2007 U.S. Dist. LEXIS 90875, at *66 ("A defendant asserting a qualified immunity defense at the 12(b)(6) stage . . . faces a formidable hurdle. . . . Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted.")

(citations and quotation marks omitted). In particular, the facts supporting the defense must be clear from the face of the complaint. In addition, in such situations, "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

"The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant*, 101 F.3d at 858 (internal quotation marks, citation, and alterations omitted). Specifically, an arresting officer is entitled to qualified immunity on claims of false arrest and malicious prosecution if either: (a) the arresting officer's belief that probable cause existed was objectively reasonable; or (b) officers of reasonable competence could disagree on whether the test for probable cause was met. *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007). The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in

some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they believe to be lawful – should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (quotation marks and citations omitted). In particular, the Second Circuit has recently affirmed that "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause. . . . If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Jenkins*, 478 F.3d at 87. Under this standard, an arresting officer is entitled to qualified immunity, as a matter of law, only "if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McClellan*, 439 F.3d at 147-48 (quoting *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987)) (emphasis in original). This standard of arguable probable cause also applies to qualified immunity claims by prosecutors. *See Murphy v. Neuberger*, No. 94 Civ. 7421, 1996 U.S. Dist. LEXIS 11164, at *37-*38 (S.D.N.Y. Aug. 6, 1996) (applying arguable probable cause standard to prosecutor's actions after determining that prosecutor was not entitled to absolute immunity); *Hickey*, 2002 U.S. Dist. LEXIS 15944, at *15 ("There is no question that the right not to be arrested and subjected to lengthy involuntary detention in police custody without probable cause to support the arrest is firmly established, and any reasonable police officer, let alone prosecutor, would reasonably be expected to know that."); *see also Coburn v. Nordeen*, 206 F. Supp. 2d 1119, 1123 (D. Kan.

2002) (applying arguable probable cause standard to determine whether prosecutor was entitled to qualified immunity).

In the instant case, plaintiffs' complaint alleges various violations of Crews's constitutional rights, including that defendants arrested him without probable cause, prosecuted him knowing he was innocent, engaged in several coercive interrogations to falsely implicate him, and failed to turn over exculpatory *Brady* material. Plainly, "[i]f a jury were to believe Plaintiffs' accounts of what transpired in the course of their arrests and prosecution, then officers would not be able to establish that they had arguable probable cause to arrest and prosecute Plaintiffs. . . . Further factual determinations are clearly prerequisite to determining whether [defendants] are entitled to a qualified immunity bar from Plaintiffs' suit." *McCray*, 2007 U.S. Dist. LEXIS 90875, at *69 (denying qualified immunity where, *inter alia*, defendants "made broad, general claims including that Defendants intentionally suppressed material, exculpatory evidence" and "engaged in impermissibly coercive interrogation tactics"). For these reasons, the Court is presently unable to make a determination, as a matter of law, that plaintiffs do not have a plausible claim that would entitle them to relief and overcome the defense of qualified immunity. In sum, while the Court again recognizes that the qualified immunity issue should be decided at the earliest juncture where possible, defendants' motion to dismiss all of plaintiffs' claims on the basis of qualified immunity is denied, given the allegations in the complaint. *See, e.g., Bostic v. City of Binghamton,* No. 3:06-CV-540, 2006 U.S. Dist. LEXIS 73948, at *13 (N.D.N.Y. Oct. 11, 2006) ("While the facts that may be established through discovery might lead to the conclusion that the individual defendants possessed actual

or arguable probable cause to arrest Plaintiff and commence his prosecution . . . that determination will have to await a summary judgment motion or trial."); *McClellan*, 439 F.3d at 148-49 (holding that "there is nothing in the present record to indicate whether 'reasonable officers would disagree' as to the propriety of [the officer's] actions" and reversing district court's grant of summary judgment); *Murphy*, 1996 U.S. Dist. LEXIS 11164 at *39-*40 (finding that because "[i]t is unclear from the undeveloped record before the Court whether it was objectively reasonable for the defendants to believe that they had probable cause to arrest plaintiff," police officers and prosecutor were not entitled to qualified immunity"); *Hickey*, 2002 U.S. Dist. LEXIS 15944, at *16 (denying qualified immunity to police and prosecutors because "the fact-intensive question of what the defendants knew or reasonably believed, or indeed whether there is any material dispute about that question, can only be addressed on a fuller factual record, at summary judgment or trial").[19]

## V. CONCLUSION

For the foregoing reasons, defendants' motion is GRANTED as to plaintiffs' claims of abuse of process under Section 1983, conspiracy under Sections 1983 and 1985, and failure to intervene under Section 1986. Defendants' motion is DENIED as to plaintiffs' claims of false arrest, false imprisonment, failure to intervene, malicious prosecution, and municipal liability, brought collectively under Section 1983. All claims against the Police Department, the DA's Office, and the Sheriff's Department are dismissed, as well as against individual defendants in their official capacities.[20]

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 27, 2007
Central Islip, NY

---

[19] Finally, defendants argue for dismissal of plaintiffs' state law claims on the grounds that, if the Court dismisses all of plaintiffs' claims under federal law, it should not exercise federal jurisdiction over the pendent state claims. That argument fails because, for the reasons discussed *supra*, the Court is not dismissing the federal claims.

[20] On July 26, 2007, Magistrate Judge William D. Wall issued a Report and Recommendation recommending that the Court dismiss the actions of *pro se* plaintiffs Nancy Gilyard, Patrick Gilyard, and Dawson, on the grounds that these plaintiffs have "failed repeatedly to appear for scheduled conferences, despite warnings that a recommendation of dismissal would be entered if they failed again to appear." Report and Recommendation at 1. A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate Judge. *See DeLuca v. Lord*, 858 F. Supp. 1330, 1345 (S.D.N.Y. 1994). As to those portions of a report to which no "specific written objection" is made, the Court may accept the findings contained therein, as long as the factual and legal bases supporting the findings are not clearly erroneous. *See* Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997); *Anderson v. United States Dep't of Justice*, No. 05-CV-2248 (JFB), 2007 U.S. Dist LEXIS 22493, at *2-*3 (E.D.N.Y. Mar. 28, 2007) (adopting Magistrate Judge's Report and Recommendation and dismissing action of plaintiff *pro se*). Here, *pro se* plaintiffs did not file an objection. Thus, because Magistrate Judge Wall's findings are not clearly erroneous, the actions of *pro se* plaintiffs Nancy Gilyard, Patrick Gilyard, and Shameeka Dawson are dismissed.

\* \* \*

The attorney for plaintiffs is Frederick K. Brewington, Esq. of the Law Offices of Frederick K. Brewington, 50 Clinton Street, Suite 501, Hempstead, New York, 11550. The attorneys for defendants are Nancy Nicotra, Esq. and Sondra M. Mendelson, Esq. of the Nassau County Attorney's Office, One West Street, Mineola, New York, 11501.