UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 06-CV-2610 (JFB)(GRB)

RAHEEM CREWS, INDIVIDUALLY AND AS PARENT OF SHAHEEM CREWS,

Plaintiff,

VERSUS

COUNTY OF NASSAU, ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
December 16, 2015

JOSEPH F. BIANCO, District Judge:

Plaintiff Raheem Crews ("plaintiff") brought this action against defendants the County of Nassau (the "County"), Officer Ronald Annarumma ("Off. Annarumma"), and Detective Nicholas Lemma ("Det. Lemma") under 42 U.S.C. § 1983 and state law for violations of his rights stemming from his arrest, detention, and prosecution for a robbery he did not commit. A jury trial on plaintiff's claim against Off. Annarumma for battery under state law, Det. Lemma for malicious prosecution under federal and state law,[1] and the County for municipal liability under *Monell* for the malicious prosecution took place from March 9, 2015 through March 23, 2015. The jury returned a verdict in favor of Off. Annarumma and the County on the battery and *Monell* claims, respectively, and returned a verdict in plaintiff's favor on the malicious prosecution claims against Det. Lemma. The jury awarded plaintiff $175,000 in compensatory damages on the malicious prosecution claims, but awarded no punitive damages.

Presently before the Court is plaintiff's timely motion pursuant to Federal Rule of Civil Procedure 59(a) to set aside the verdict

---

[1] The County conceded and the parties agreed prior to instructing the jury that, by operation of law under the principle of vicarious liability, the County would also be liable for the state law malicious prosecution claim against Det. Lemma. As the Court instructed the jury, "[o]n these state law claims for relief, unlike the federal Section 1983 claims, responsibility is incurred not only by the individual actor Detective Lemma but also by his employer, the defendant County of Nassau, if the tort in question took place and was committed within the scope of employment of the individual that caused the injury. As noted earlier, the County of Nassau does not dispute that Detective Lemma was acting within the scope of his employment with respect to the claims at issue in this case. Therefore, if you find that Detective Lemma is liable under the state law malicious prosecution claim, the County of Nassau also would be liable as a matter of law." (Jury Instr., ECF No. 334, at 26.)

and for a new trial. Plaintiff raises two grounds for relief: (1) the verdict on the *Monell* claim was against the weight of the evidence, which plaintiff contends established that the County failed to adequately train or supervise its personnel on the handling of exculpatory evidence;[2] and (2) the compensatory damages award failed to properly value the time plaintiff spent in custody, and therefore is inadequate as a matter of law.

For the following reasons, the Court denies plaintiff's motion to set aside the verdict and for a new trial in its entirety. Specifically, with respect to the *Monell* claim, Det. Lemma testified repeatedly that he was aware of his duty to disclose the exculpatory information that plaintiff had been incarcerated at the time of the robbery of which he had been accused and, thus, could not have committed the robbery. Det. Lemma openly admitted he failed to disclose the exculpatory information to plaintiff, plaintiff's attorney in his criminal proceeding, the District Attorney's Office, and/or his supervisors at the Nassau County Police Department ("NCPD"), despite knowing that he was required to do so, and ascribed his failure to do so to caseload, tiredness, and other general excuses. Based on that testimony alone, it would have been more than reasonable for the jury to conclude that any failure to train or supervise on the part of the County was not a proximate cause of plaintiff's injuries, given that Det. Lemma unequivocally stated that he knew the proper course of action, but simply failed to take it. Second, with respect to the damages award, plaintiff argues that the $175,000 award in this case fails to adequately compensate him for the 125 days he was wrongfully detained because the ratio of dollars to hours (or days) spent in jail fails to meet a reasonable threshold, based on comparisons to other cases. The cases cited by plaintiff in support of this argument, however, do not support such a formulaic analysis. Courts do not review jury awards in cases like these— involving obviously subjective noneconomic damages, such as emotional harm and loss of liberty—to ensure conformity with some minimum dollars-per-hour amount, as if plaintiffs were receiving a set rate for the length of their wrongful detention. Instead, damages in each particular case are extremely fact specific, and the law is clear that courts shall review awards based on the totality of the circumstances to ensure that they do not materially deviate from a reasonable amount of compensation, based, in part, on comparisons to roughly analogous cases. Indeed, plaintiff's approach would tend to harm plaintiffs whose wrongful incarceration was much shorter than plaintiff's in the case at bar but who nonetheless received substantial sums due to the specific aggravating circumstances of confinement, because the dollars-per-hour in those cases could appear excessive upon review.

In short, having presided over the trial, the Court concludes that the verdict as to the

---

[2] In his reply, plaintiff discussed at length the issue of the County's duty to indemnify Det. Lemma for the compensatory damages, seemingly in an attempt to support the argument for municipal liability. The Court does not believe that Det. Lemma's indemnification is relevant to plaintiff's motion for a new trial. Whether the County is responsible for indemnifying Det. Lemma is an issue separate and apart from the County's *Monell* liability for its failure to train or supervise. Moreover, the compensatory damages awarded by the jury in this case were based on Det. Lemma's liability on the § 1983 and state law malicious prosecution claims, which relate to the same underlying injuries; as discussed above, because the County conceded it would be vicariously liable for Det. Lemma's conduct if the jury returned a verdict for the plaintiff on the state law malicious prosecution claim, the County is already liable (along with Det. Lemma) for the awarded compensatory damages by operation of law. Therefore, the Court finds no need to further address plaintiff's arguments regarding indemnification.

2

*Monell* claim was not against the weight of the evidence, and the compensatory damages award did not materially deviate from a reasonable amount of compensation given the circumstances.

I.     PROCEDURAL BACKGROUND[3]

Plaintiff filed his complaint on May 25, 2006. Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on June 14, 2007. The Court granted in part and denied in part that motion on December 27, 2007. *See generally Crews v. Cnty. of Nassau*, No. 06-CV-2610 (JFB)(WDW), 2007 WL 4591325 (E.D.N.Y. Dec. 27, 2007). The County defendants moved for summary judgment on July 11, 2011, and Det. Lemma moved for summary judgment on July 20, 2011. Plaintiff cross-moved for summary judgment against Det. Lemma on September 15, 2011. After hearing oral argument on the motions, the Court allowed further discovery and supplemental briefing by the parties, followed by additional oral argument. On February 11, 2014, the Court granted in part and denied in part the motions by the County defendants and Det. Lemma, and denied the motion by plaintiff. *See generally Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186 (E.D.N.Y. 2014).

From March 9 through March 23, 2015, this Court held a jury trial. The jury found in favor of defendants Off. Annarumma and the County on the battery and *Monell* claims, respectively, and found in favor of plaintiff on the malicious prosecution claims against Det. Lemma, awarding plaintiff $175,000 in compensatory damages and no punitive damages. Plaintiff timely moved to set aside the verdict and for a new trial pursuant to Federal Rule of Civil Procedure 59(a) on May 8, 2015. Defendants filed oppositions to the motion on June 15, 2015. Plaintiff replied on July 1, 2015. Defendants filed surreplies on July 22 and July 23, 2015. The Court heard oral argument on July 29, 2015. The matter is fully submitted.

II.     STANDARD OF REVIEW

A court may grant a new trial in a jury case for any of the reasons "for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The decision whether to grant a new trial under Rule 59 "is 'committed to the sound discretion of the trial judge.'" *Stoma v. Miller Marine Servs., Inc.*, 271 F. Supp. 2d 429, 431 (E.D.N.Y. 2003) (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992)). Thus, "[a] new trial may be granted [ ] when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998).

In contrast to a motion for judgment as a matter of law, a court may grant a motion for a new trial "even if there is substantial evidence supporting the jury's verdict." *Id.* at 134. Additionally, "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *Id.* (citing *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). A court considering a Rule 59 motion for a new trial, however, "must bear in mind [ ] that the court should only grant such a motion when the jury's verdict is 'egregious.'" *Id.* For this reason, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of

---

[3] The Court has not included a general factual background section, but rather analyzes the relevant facts within the discussion section *infra*.

3

justice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)); *see also Patrolmen's Benevolent Ass'n of N.Y.C. v. City of New York*, 310 F.3d 43, 54 (2d Cir. 2002). Furthermore, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Fugazy*, 983 F.2d at 363; *see also DLC Mgmt. Corp.*, 163 F.3d at 134 ("[A] court should rarely disturb a jury's evaluation of a witness's credibility.").

With respect to damages, it is well settled that, pursuant to Rule 59, a trial judge has the discretion to grant a new trial if the verdict is against the weight of the evidence, and "[t]his discretion includes overturning verdicts for excessiveness and ordering a new trial without qualification, or conditioned on the verdict winner's refusal to agree to a reduction (remittitur)." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 433 (1996); *accord Rangolan v. Cnty. of Nassau*, 370 F.3d 239, 244 (2d Cir. 2004); *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 117 (2d Cir. 2004). As the Second Circuit has instructed, "[w]here there is no particular discernable error, we have generally held that a jury's damage award may not be set aside as excessive unless 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir. 1988)). However, if the trial judge identifies a specific error, "the court may set aside the resulting award even if its amount does not 'shock the conscience.'" *Id.* In reviewing a claim that a jury's damages award was excessive, the court must "accord substantial deference to the jury's determination of factual issues." *Martell v. Boardwalk Enters.*, 748 F.2d 740, 750 (2d Cir. 1984). Moreover, "the trial judge is not called upon to say whether the amount is higher than he [or she] personally would have awarded." *Dagnello v. Long Island R.R.*, 289 F.2d 797, 806 (2d Cir. 1961).

The compensatory damages in this case, however, were awarded based on the finding of liability on parallel federal and state law claims. "A federal court, in reviewing the amount of damages awarded on a state law claim, must apply New York law." *Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006) (citing *Gasperini*, 518 U.S. at 430-31 and *Cross v. N.Y.C Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005)). "New York law provides that the appellate division 'reviewing a money judgment . . . in which it is contended that the award is excessive or inadequate . . . shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.'" *Id.* (alterations in original) (quoting N.Y. C.P.L.R. § 5501(c)). The Supreme Court has held that "the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or *remittitur* should be ordered." *Gasperini*, 518 U.S. at 435 (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989)).[4]

---

[4] The Supreme Court noted in *Gasperini* that the quoted holding from *Browning-Ferris* referred to punitive damages, but explained that "'[f]or purposes of deciding whether state or federal law is applicable, the question whether an award of compensatory damages exceeds what is permitted by law is not materially different from the question whether an award of punitive damages exceeds what is permitted by law.'" 518 U.S. at 435 n.18 (quoting *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1012 (1995)). Accordingly, this Court extends the standard

4

"To determine whether an award 'deviates materially from what would be reasonable compensation,' New York state courts look to awards approved in similar cases." *Id.* at 425. These awards, however, are "not binding but instructive." *In re Joint E. & S. Dist. Asbestos Litig.*, 9 F. Supp. 2d 307, 311 (S.D.N.Y. 1998); *see also Senko v. Fonda*, 53 A.D.2d 638, 639 (N.Y. App. Div. 1976) (stating that prior awards are not binding but that they "may guide and enlighten the court and in a sense, may constrain it"). "[The § 5501(c)] standard requires a court to determine a reasonable range and to take corrective action when the particular jury award deviates materially from that range." *Peterson v. Cnty. of Nassau*, 995 F. Supp. 305, 321 (E.D.N.Y. 1998).

Although N.Y. C.P.L.R. § 5501(c) requires "closer court review than the common-law 'shock the conscience' test," *Gasperini*, 518 U.S. at 429, "[d]ue to the uncertainties in calculating [non-economic] damage awards, New York courts have consistently held that deference to the jury's findings is required" in reviewing a jury's award. *Cantu v. Flanigan*, 705 F. Supp. 2d 220, 227 (E.D.N.Y. 2010); *see also Levine v. E. Ramapo Cent. Sch. Dist.*, 192 A.D.2d 1025, 1026 (N.Y. App. Div. 1993) (stating that "considerable deference should be accorded to the interpretation of the evidence by the jury").

### III. DISCUSSION

According to plaintiff, the verdict should be set aside and a new trial held for two reasons: (1) the verdict on the *Monell* claim was against the weight of the evidence, which plaintiff contends established that the County failed to adequately train or supervise its personnel on the handling of exculpatory evidence; and (2) the compensatory damages award failed to adequately compensate plaintiff for the length of time he was wrongfully detained. The Court addresses each argument in turn and, for the reasons set forth below, denies the requested relief.

### A. The *Monell* Claim

A municipal entity may be held liable under Section 1983 where the plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) (noting that municipal policy must be the "moving force of the constitutional violation"); *see also Patterson*, 375 F.3d at 226. "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992)). Instead, constitutional violations by government officials that are "persistent and widespread" can be "so permanent and well settled as to constitute a custom or usage with the force of law, and thereby generate municipal liability." *Sorlucco*, 971 F.2d at 870-71 (citing *Monell*, 436 U.S. at 691) (internal quotation marks omitted). In addition, a policy, custom or practice of the entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Patterson*, 375 F.3d at 226 (quoting *Kern*, 93 F.3d at 44). Municipal training is actionable where, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can

---

of review set forth in *Gasperini*, *Browning-Ferris*, and *Consorti* to the instant motion.

reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).

A *Monell* claim can only succeed, though, if a plaintiff can "prove that the municipality was, in the language of the statute, the 'person who . . . subjected, or cause[d] [him] to be subjected,' to the deprivation of constitutional rights." *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (alterations in original). In other words, with respect to causation, for a plaintiff to prove municipal liability under § 1983, "[a]t the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

Here, plaintiff argues that the verdict was against the weight of the evidence because the testimonial evidence from NCPD detective witnesses, other than Det. Lemma, established that the County provided no training to its police officers on how to handle exculpatory evidence. Plaintiff, in essence, argues that this purportedly uncontroverted testimony clearly substantiated the *Monell* claim against the County.

Even assuming *arguendo* that this testimony demonstrated a failure to train employees constituting a policy, custom, or practice on the part of the County, the plaintiff also had the burden of proving beyond a preponderance of the evidence that his constitutional injury was caused by that failure to train. In the briefing and at oral argument, plaintiff did not address the manner in which it proved causation, and seemingly assumed that the connection between the purported failure to train and the injury to plaintiff was implied by the existence of the County's purported failure to train. (*See* Pl.'s Reply, ECF No. 349, at 2 ("Mr. Crews' requests for a new trial against Defendant County lies [sic] on the grounds that based on the weight of the evidence adduced during the trial, a verdict finding of no liability against Defendant County was not supported, and clearly would result in a miscarriage of justice in that the Detectives that testified did not just state that they did not remember training on handling exculpatory evidence, they were clear that they had not been provided such training. This is were [sic] the Jury was in error in making its find [sic] as to the County. Further, the County's attempt to continue to argue that it is unconnected to and is separate and apart from Lemma is subject to several levels of evaluation given their own past behavior.").) However, at trial, Det. Lemma himself testified under questioning by each of the parties that, regardless of any training he did or did not receive from the County on the handling of exculpatory evidence, he fully understood his obligations to verify and disclose exculpatory evidence. Specifically, Det. Lemma testified that he knew at the time plaintiff was wrongfully detained that: (1) it was his duty to verify the exculpatory information about plaintiff Crews through the various available resources after one of the other suspects stated plaintiff was not involved in the robbery; (2) once he discovered via the police systems that plaintiff was in prison at the time of the robbery, it was his duty to contact his supervisor and/or the assistant district attorney handling the case to inform them of the information; (3) it was his obligation to disclose this information, if he could, to plaintiff and/or his attorney and family.[5] Det. Lemma's explanation for why he failed in all these duties essentially amounted to an

---

[5] None of the parties ordered transcripts of the proceedings, but the Court specifically recalls Det. Lemma's testimony regarding this issue, and when the Court discussed this evidence at oral argument, plaintiff did not contest that Det. Lemma made these various admissions in his testimony.

excuse based on tiredness and a failure to remember the information; he testified that he learned of the exculpatory information late at night (when no supervisor was present) after a long work day, made a "mental note" to address the issue with a supervisor or others during his next shift, but then forgot to do so until months later after information came to light regarding errors in the case file related to the date of the crime and plaintiff's alibi.

This testimony clearly vitiates plaintiff's evidence in support of causation for his *Monell* claim. Plaintiff did not offer any other evidence to draw an "affirmative link" between the failure to train and his constitutional injury; indeed, it seems clear that he cannot prove the connection through evidence other than Det. Lemma's testimony, given the circumstances of this case where plaintiff's injury hinged solely on the failure of Det. Lemma (and Det. Lemma alone) to disclose the alibi evidence of which only he was aware. Moreover, the Court notes that Det. Lemma's testimony on this topic was far from self-serving. In fact, Det. Lemma cast more of the blame on himself in so testifying, as opposed to ascribing his failings to the County for not properly instructing him on how to handle exculpatory information. Therefore, there is no basis to conclude that the jury improperly disregarded the testimony by the other witnesses regarding a lack of training by the County, because, if they accepted Det. Lemma's testimony as credible, it was entirely reasonable for the jury to conclude that even if there had been a lack of training, it had no direct injurious effect on plaintiff. "Where the jury resolved conflicting versions of events in favor of one party, a new trial is appropriate only where one 'conflicting account is so inherently implausible as to tax credulity, or there is independent evidence in the trial record' such that finding for one party, instead of another, would 'lead to a miscarriage of justice.'" *FinnVerburg v. N.Y. State Dep't of Labor*, 165 F. Supp. 2d 223, 228 (N.D.N.Y. 2001) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 70 F. Supp. 2d 300, 308 (S.D.N.Y. 1999)). That is not the case here.

Accordingly, having carefully considered plaintiff's arguments in light of the trial record, the Court concludes that the jury's verdict on the *Monell* claim was not against the weight of the evidence, and, thus, a new trial is not warranted on this ground. The Court does not conclude that the jury returned a seriously erroneous result or that the verdict is a miscarriage of justice.

B.  Insufficiency of Damages

Plaintiff argues that a new trial should also be granted because the $175,000 compensatory damage award by the jury inadequately compensated him for the 125 days he spent wrongfully incarcerated.[6]

---

[6] Plaintiff also at times appeared to argue in the alternative for additur; in other words, that the Court should "adjust[] the jury award to account for a discrete fact that manifestly should have been part of the damage calculations and as to whose amount there was no dispute." (Pl.'s Mem., ECF No. 343-1, at 5.) Generally, a court's increasing of a jury's award or conditioning the denial of a new trial on defendant's acquiescence to an additur is barred by the Seventh Amendment. *See Dimick v. Schiedt*, 293 U.S. 474, 486-87 (1935). Although courts appear to disagree whether there is any exception to the *Dimick* rule at all, some courts have found that additur may be narrowly employed where "there is no valid dispute as to the amount of damages," but the jury failed to include some undisputed element of damages in their award. *Moreau v. Oppenheim*, 663 F.2d 1300, 1311 (5th Cir. 1981). The "undisputed" damages qualifying for this exception involve easily computed numbers such as back pay, *U.S. E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1252 (11th Cir. 1997), or an undisputed amount of attorneys' fees, *Moreau*, 663 F.2d at 1311, that a jury clearly erred in excluding in determining damages. Here, however, the "discrete fact" at issue, as stated by plaintiff, is "the shear [sic] amount of time taken away from Mr. Crews a young

Plaintiff states that "[t]he element and value of his time and spending four months in custody, which was clearly improper, must be evaluated. Rather than just look at the total number awarded and upheld in other cases, we examined what were the time periods to which the dollar amounts were connected." (Pl.'s Mem., ECF No. 343-1, at 6.) Plaintiff lists prior cases in this Circuit and elsewhere in which the plaintiffs, all of whom spent less time wrongfully detained than Crews, received awards ranging from $100,000 to $2,000,000; plaintiff then divides those awards by the hours each plaintiff respectively spent incarcerated. (*Id.* at 6-7.) Plaintiff asserts that the average dollars/hour ratio across these awards is $24,950.80 (or $55,637, depending on which cases plaintiff includes in the calculation), whereas the dollars/hour in the instant award is $58.33 ($175,000 for approximately 3,000 hours). (*Id.*) Accordingly, plaintiff contends that the "hourly rate awarded [to Crews] of $58.33 per hour is a decision that cries out for justice to prevail," and a new trial was warranted because the jury "failed to properly value the hours and time spent (125 days) in wrongful custody which, if let stand, results in a miscarriage of justice." (*Id.* at 7-8.)

The Court finds this argument unpersuasive. First, the law in the Second Circuit is clear that, in cases involving wrongful confinement, damages for a plaintiff's loss of liberty are "separable from damages recoverable for such injuries as physical harm, embarrassment, or emotional suffering." *Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir. 2004). "Thus, a verdict that a plaintiff should not receive more than nominal damages for physical injury, economic loss, or mental suffering does not foreclose a more substantial award for his loss of liberty." *Id.* Although loss of liberty is therefore compensable separate from any related emotional harm or embarrassment, this principle does not mean that there is some required minimum amount of compensation for a given period of unjust detention. Moreover, although plaintiff's counsel analyzed the selected jury awards by a dollars/hour formula, none of the cases to which plaintiff points actually devised or reviewed the award in that manner. In other words, courts do not analyze damages awards by assigning a dollar value to a unit of time as the starting point, and then multiplying that amount by the length of time incarcerated to determine whether the award is accurate.[7] Instead, courts review awards

---

African-American man." (Pl.'s Mem., ECF No. 343-1, at 5-6.) It should be obvious that the value of a loss of liberty, as compared to back pay or attorneys' fees, is disputed and a matter of judgment on the part of the jury, and therefore not eligible for additur. In any event, no additur is warranted for the other reasons discussed *infra*.

[7] At oral argument, plaintiff's counsel continued to assert that some courts had actually taken such an analytic approach in reviewing wrongful detention awards, listing several cases with the length of the detention and the award amount. Upon questioning by the Court, however, counsel stated that he may have merely read another case that discussed those awards, rather than the cases themselves; indeed, based on the list, it appears that counsel was listing some of the cases cited in *Sylvester v. City of New York*, No. 03

Civ. 8760 (FM), 2006 WL 3230152, at *4 (S.D.N.Y. Nov. 8, 2006). Upon review, it is clear that the court in *Sylvester* was the source of the comparison between length of detention and amount of damages, rather than the courts in the underlying cases; the *Sylvester* court was simply establishing a range of comparable damages amounts from cases with brief detentions as a means of refuting plaintiff's argument that her $30,000 award was inadequate, given her detention only lasted "several hours" and there appeared to be no other aggravating circumstances in the case. *Id.* Moreover, as the court in *Sylvester* clearly notes, several of the cases identified by plaintiff were settlement amounts, rather than jury awards reviewed by a court; at least one other award cited by plaintiff was later overturned on appeal as excessive. *Rohrs v. Rohrs*, 793 N.Y.S.2d 532, 534 (N.Y. App. Div. 2005) ($50,000 in compensatory damages deviated

by considering all of the relevant factual circumstances; simply comparing dollars to hours incarcerated would ignore the multitude of other issues in evidence that could affect the damages. As another court in this District recently wrote in rejecting a similar (but inverse) argument by the defendant challenging a jury award (*i.e.* that the dollars/hour of the jury award was too high): "first, Defendants only consider Plaintiff's loss of liberty, and not his physical or emotional damages resulting from the false arrest; second, while the length of detention, and average award based on length of detention, may be an important factor in determining damages, Defendants' mechanical calculation ignores the requirement that the Court must consider the unique circumstances of each case." *Graham v. City of New York*, No. 08-CV-3518 MKB, 2015 WL 5258741, at *25 (E.D.N.Y. Sept. 10, 2015).

The question, then, is whether the award in this case deviated materially from what would be reasonable compensation, given the circumstances of this case.[8] *Patterson*, 440 F.3d at 119. Here, the Court finds that the award was not unreasonably low. Plaintiff testified extensively as to the conditions of his confinement, including repeated strip searches, assaults by other inmates, and the inability to spend time with his young child, as well as the emotional aftereffects and embarrassment he suffered. Plaintiff's mother also testified as to her observations of emotional changes in plaintiff. On the other hand, defendants established that plaintiff had been incarcerated on occasions both prior and subsequent to the incidents at issue in this case, including a conviction around June 2007 resulting in plaintiff being incarcerated for approximately two and a half years (a length of imprisonment far exceeding the 125 days of wrongful detention). It was also established that plaintiff did not consult a mental health professional for treatment of any emotional harm. The Court also notes that where, as here, the jury award encompasses compensation to plaintiff for all his injuries related to the malicious prosecution, including subjective noneconomic harms, "it is difficult to precisely quantify damages for emotional distress, mental anguish, and mental pain and suffering, because such concepts are abstract and ill-suited to exacting calculation." *Ruhlmann v. Smith*, 323 F. Supp. 2d 356, 367 (N.D.N.Y. 2004).

Under these circumstances, it is clear that the jury's award of $175,000 was not inadequate. In arriving at a reasonable range of damages, the Court has considered the cases proffered by plaintiff. *See, e.g.*, *Ismail v. Cohen*, 899 F.2d 183, 185-87 (2d Cir. 1990) ($650,000 in compensatory damages where plaintiff was unjustly confined for sixty hours and then tried and acquitted on three criminal counts, where defendant police officer "gave materially false testimony and admitted that, although he never even read the criminal complaint, he had sworn to its accuracy"); *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 285, 308 (S.D.N.Y. 2001) ($275,000 award for a plaintiff wrongfully detained for less than a day but who suffered from PTSD and was "severely, and perhaps permanently, injured"). Based on the Court's examination of other roughly similar cases, however, the range is far broader and easily encompasses the award in this case. *See King v. Macri*, 993 F.2d 294, 297 (2d Cir. 1993) ($75,000 award was

---

materially from what would be reasonable compensation for one day's unjustified detention). Plaintiff therefore still has not pointed to any court that employed the mechanical calculations advanced by plaintiff.

[8] The Court would arrive at the same conclusion under the "shocks the conscience" federal standard as well.

reasonable for plaintiff who was incarcerated for two months, subjected to regular strip searches, and stood trial for the false charges); *McClellan v. Smith*, No. 02-CV-1141 (GLS/DRH), 2009 WL 3587431 (N.D.N.Y. Oct. 26, 2009) ($150,000 in compensatory damages for plaintiff who was falsely imprisoned for seven days and maliciously prosecuted for over a year); *Jackson v. State of New York*, 2009 WL 6810548 (N.Y. Ct. Cl. Dec. 21, 2009) ($125,000 award for individual wrongfully imprisoned for 105 days in a facility where he had previously suffered a sexual assault, causing him great emotional distress); *Sanabria v. State*, 908 N.Y.S.2d 527, 532-33 (N.Y. Ct. Cl. 2010) (awarding $20,000 in damages to individual falsely imprisoned for 91 days because the court did not credit the testimony regarding mental anguish in part because "claimant has previously served extensive periods of incarceration," which diminished any emotional harm); *Johnson v. State*, 588 N.Y.S.2d 722, 725 (N.Y. Ct. Cl. 1992) ($40,000 in compensation for claimant wrongfully imprisoned for 747 days based, in part, on the claimant's extensive criminal history which reduced any damage to his reputation, humiliation, or pain). The jury award of $175,000 clearly does not deviate materially from this reasonable range.

Therefore, plaintiff's motion for a new trial on the grounds that the damages award was insufficient is denied.

IV. CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff has failed to set forth any grounds that warrant the setting aside of the verdict and a new trial. Accordingly, the Court denies plaintiff's motion pursuant to Federal Rule of Civil Procedure 59.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: December 16, 2015
      Central Islip, NY

\*\*\*

Plaintiff is represented by Frederick K. Brewington and Gregory Calliste, Jr. of Law Offices of Frederick K. Brewington, 556 Peninsula Boulevard, Hempstead, NY 11550. Det. Lemma is represented by Mitchell Garber of Worth, Longworth & London, LLP, 111 John Street, Suite 640, New York, NY 10038. The County is represented by Matthew Cuomo of Cuomo LLC, 9 East 38th Street, New York, NY 10016.