# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 06-CV-2610 (JFB)(GRB)

RAHEEM CREWS, INDIVIDUALLY AND AS PARENT OF SHAHEEM CREWS,

Plaintiff,

VERSUS

COUNTY OF NASSAU, ET AL.,

Defendants.

**MEMORANDUM AND ORDER**
December 18, 2019

JOSEPH F. BIANCO, Circuit Judge (sitting by designation):

Plaintiff Raheem Crews ("plaintiff") brought this action against the County of Nassau ("Nassau County"), Officer Ronald Annarumma ("Officer Annarumma"), and various other defendants employed by Nassau County (collectively, the "County Defendants"), as well as Detective Nicholas Lemma ("Detective Lemma"), under 42 U.S.C. § 1983 and New York State law, for alleged civil rights violations stemming from his arrest, detention, and prosecution for a robbery he did not commit.

Following discovery and summary judgment motions, the case proceeded to trial on plaintiff's claims against (1) Officer Annarumma for battery, (2) Detective Lemma for malicious prosecution under state and federal law, and (3) Nassau County for municipal liability under *Monell* and under New York state law in connection with the malicious prosecution claim. The jury found in favor of Officer Annarumma on the battery claim, in favor of Nassau County on the *Monell* claim, and in favor of plaintiff on the malicious prosecution claims against Detective Lemma. The jury awarded plaintiff $175,000 in compensatory damages against Detective Lemma but did not award punitive damages. Nassau County agreed that it was also liable under the doctrine of *respondeat superior* for the compensatory damages awarded against Detective Lemma on the state law malicious prosecution claim.

Presently before the Court are motions for fees and costs filed by plaintiff's former counsel, Arshad Majid, of Majid & Associates, who represented plaintiff from the start of the case in May 2006 until January 2007, and plaintiff's current counsel, the Law Offices of Frederick K. Brewington ("the Brewington Law Firm").

Nassau County argues that it is not liable for attorneys' fees or costs because the jury found in its favor on the *Monell* claim, and because the Nassau County Police Indemnification Board ("the Board")

revoked Detective Lemma's indemnification in April 2009 (a decision that was ultimately affirmed by the New York Court of Appeals).

In response, both plaintiff and Detective Lemma argue that Nassau County should indemnify Detective Lemma for any awarded fees and costs under the doctrine of equitable estoppel. In addition, Detective Lemma argues that Mr. Majid's application should be denied in its entirety for failure to submit contemporaneous time records or, in the alternative, that any award should be reduced. Detective Lemma also asserts that the Brewington Law Firm's award should be reduced.

As explained below, the Court concludes that Nassau County is not obligated to indemnify Detective Lemma for attorneys' fees and costs. With respect to the award against Detective Lemma, the Court concludes that the fees and costs requested by Mr. Majid and by the Brewington Law Firm should be reduced.

I. BACKGROUND

A. Factual Background

The Court set forth the factual background of this case in its February 11, 2014 Order denying in part and granting in part defendants' motions for summary judgment and denying plaintiff's motion for summary judgment in its entirety, *see generally Crews v. County of Nassau*, 996 F. Supp. 2d 186 (E.D.N.Y. 2014), and will not repeat that background here.

B. Procedural History

Plaintiff, represented by Mr. Majid, filed the complaint on May 25, 2006. On July 21, 2006, the Nassau County Attorney's Office sent Detective Lemma a letter notifying him that he had been named as a defendant in the case, and advising him that he was entitled to legal representation provided by Nassau County and indemnification from Nassau County, provided that the act or omission complained of was within the scope of his duties. On July 28, 2006, the Board found that Detective Lemma was entitled to indemnification for his legal defense under New York General Municipal Law § 50-l.

On December 27, 2007, the Court granted in part and denied in part defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See generally Crews v. County of Nassau*, No. 06-CV-2610 (JFB)(WDW), 2007 WL 4591325 (E.D.N.Y. Dec. 27, 2007).

The case proceeded to discovery. As relevant here, during Detective Lemma's February 9, 2009, deposition, he testified that, at some point, he learned that plaintiff was incarcerated on the day of the charged robbery, but failed to notify prosecutors about that exculpatory information. As a result of this new information, Nassau County reconvened the Board. On April 17, 2009, the Board revoked Detective Lemma's indemnification and withdrew representation by the Nassau County Attorney's Office.

The County Defendants moved for summary judgment on July 11, 2011, and Detective Lemma moved for summary judgment on July 20, 2011. Plaintiff cross-moved for summary judgment against Detective Lemma on September 15, 2011. After hearing oral argument on the motions, the Court allowed further discovery and supplemental briefing by the parties, followed by additional oral argument. On February 11, 2014, the Court granted in part and denied in part the motions by the County Defendants and Detective Lemma, and denied plaintiff's motion.

From March 9 through March 23, 2015, the Court held a jury trial. The jury found in favor of Officer Annarumma and Nassau County on the battery and *Monell* claims,

respectively, and in favor of plaintiff on the malicious prosecution claims against Detective Lemma. The jury awarded plaintiff $175,000 in compensatory damages but did not award any punitive damages.

On May 8, 2015, plaintiff timely moved to set aside the verdict and for a new trial under Federal Rule of Civil Procedure 59(a). The Court denied plaintiff's motion on December 16, 2015. *See generally Crews v. County of Nassau*, 149 F. Supp. 3d 287 (E.D.N.Y. 2015).

On December 30, 2015, the Brewington Law Firm moved for attorneys' fees and costs. On January 14, 2016, Mr. Majid also moved for fees and costs. Nassau County and Detective Lemma opposed the motions on February 12, 2016. On March 4, 2016, the Brewington Law Firm and Mr. Majid submitted replies.

On March 16, 2016, Detective Lemma advised the Court that he wished to move for summary judgment on his crossclaim for indemnification against Nassau County, as it related to attorneys' fees and costs. On May 19, 2016, on consent of the parties, the Court stayed Detective Lemma's time for moving until the Appellate Division of the New York State Supreme Court, Second Department, decided Detective Lemma's appeal from the dismissal of his Article 78 petition for indemnification from Nassau County. After the Appellate Division affirmed the dismissal of Detective Lemma's Article 78 petition, Detective Lemma requested that the Court continue to stay his time for moving until the New York Court of Appeals heard his appeal. The Court granted that request. On June 14, 2018, the New York Court of Appeals affirmed the Board's decision to deny indemnification. *See generally Lemma v. Nassau Cty. Police Officer Indemnification Bd.*, 31 N.Y.3d 523 (2018).

In light of that decision, Detective Lemma advised the Court that there was no basis for a summary judgment motion on his crossclaim for indemnification against Nassau County, but requested permission to submit a statement of his present financial condition for consideration by the Court in connection with the pending application for attorneys' fees and costs against him. The Court granted that request, and Detective Lemma submitted the additional information on August 15, 2018. On September 10, 2018, the Brewington Law Firm responded to that supplemental submission.

On January 22, 2019, the Court heard oral argument on the motions for attorneys' fees and costs, and requested additional briefing. On February 12, 2019, Detective Lemma submitted additional briefing, arguing that Nassau County should be equitably estopped from denying indemnification from the date Detective Lemma entered into the representation agreement with Nassau County on July 21, 2006, until it was revoked by the Board on April 17, 2009. In particular, Detective Lemma argued that equitable estoppel should apply because the Nassau County Attorney's Office failed to advise him of the inherent conflict of interest posed by that Office representing him and Nassau County, and because the Nassau County Attorney's Office failed to exercise due diligence in properly investigating the allegations. On February 12, 2019, the Brewington Law Firm submitted a supplemental memorandum of law joining in Detective Lemma's arguments and, on February 14, 2019, Mr. Majid also joined in those arguments. On March 5, 2019, Nassau County submitted a supplemental opposition and, on March 22, 2019, the Brewington Law Firm submitted a reply. Finally, on March 11, 2019, Detective Lemma submitted updated financial information to the Court. The Court has fully considered the parties' submissions and arguments.

## II. DISCUSSION

As noted earlier, presently before the Court are applications for attorneys' fees and costs submitted by both Mr. Majid and the Brewington Law Firm. Mr. Majid requests $186,937.50 in fees and $2,351.97 in costs. The Brewington Law Firm requests $411,841.75 in fees and $19,357.60 in costs.

As a threshold matter, Detective Lemma and plaintiff argue that Nassau County should indemnify Detective Lemma in connection with any award of attorneys' fees or costs against him. Moreover, Detective Lemma argues that the Court should deny Mr. Majid's fee request in its entirety, and substantially reduce the Brewington Law Firm's fees, on several grounds. One of the grounds for the reduction of an award raised by Detective Lemma is his financial situation. The Court addresses each of these issues in turn.

### A. Indemnification

Detective Lemma and plaintiff[1] argue that Nassau County must indemnify Detective Lemma under General Municipal Law § 50-l for any attorneys' fees and costs awarded from the commencement of the lawsuit until the Board revoked Detective Lemma's indemnification in April 2009. Specifically, Detective Lemma contends that Nassau County should be equitably estopped from denying indemnification during that time frame and that the New York State Court of Appeals decision does not preclude this relief. Plaintiff similarly contends that Nassau County's failure to exercise reasonable diligence requires it to honor the indemnification agreement and that Nassau County is estopped from denying indemnification.

The Court finds these arguments to be without merit. As noted, after Detective Lemma testified that he learned that plaintiff was incarcerated on the day of the charged robbery, but failed to notify prosecutors about that exculpatory information, the Board revoked its indemnification determination. The New York Court of Appeals later affirmed that decision. *See generally Lemma v. Nassau Cty. Police Officer Indemnification Bd.*, 31 N.Y.3d 523 (2018). Notably, the Court of Appeals concluded that the "legislature . . . left the determination of whether the statutory prerequisites [for indemnification] are met to the discretion of the Board," *id.* at 529, and that "the Board did not err when it interpreted [General Municipal Law § 50-l] as permitting it to deny indemnification based on its assessment of the propriety of [Detective Lemma's] conduct," *id.* at 532. In light of that decision, there is no basis for this Court to entertain arguments relating to the Board's interpretation and application of General Municipal Law § 50-l.

Notwithstanding the New York Court of Appeals decision, Detective Lemma and plaintiff assert that this Court can and should find in favor of Detective Lemma on his indemnification claim on the basis of equitable estoppel. Detective Lemma did not raise an equitable estoppel argument in the New York state courts, and has not explained his failure to do so. Nor did plaintiff, at any point during those proceedings, seek to intervene to assert his objections on equitable

---

[1] The Court notes that at least one New York State court has held that the victim of a county police officer's torts does not have standing to challenge the Board's indemnification decisions. *See Galvani v. Nassau Cty. Police Indemnification Review Bd.*, 674 N.Y.S.2d 690 (2d Dep't 1998). Plaintiff has not cited any authority establishing that he has standing to do so here. In any event, even assuming *arguendo* that such standing existed, the Court concludes that there is no basis for Detective Lemma or plaintiff to challenge that indemnification decision on grounds of equitable estoppel or any other grounds.

estoppel grounds, or any other grounds. In any event, even assuming *arguendo* that this challenge can be made to this Court in this context, the Court concludes that no grounds for equitable estoppel exist in this case, nor are there any other grounds to disturb the New York Court of Appeals' decision on indemnification.

"Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). "'Estoppel' generally means that one party in a dispute should not be permitted to reap any benefit from its own misrepresentations." *United States v. Schmitt*, 999 F. Supp. 317, 360 (E.D.N.Y. 1998), *aff'd*, 28 F. App'x 63 (2d Cir. 2002). Thus, to establish a claim for equitable estoppel under New York law, a party must show: "(1) [a]n act constituting a concealment of facts or a false misrepresentation; (2) [a]n intention or expectation that such acts will be relied upon; (3) [a]ctual or constructive knowledge of the true facts by the wrongdoers; [and] (4) [r]eliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 90 (2d Cir. 2013) (quoting *Gen. Elec. Capital Corp. v. Eva Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994)).

As a general matter, equitable estoppel is an "'extraordinary remedy,' which should be invoked 'sparingly and only under exceptional circumstances.'" *Twersky v. Yeshiva Univ.*, 579 F. App'x 7, 10 (2d Cir. 2014) (first quoting *Clark v. Ravikumar*, 935 N.Y.S.2d 633, 635 (2d Dep't 2011); then quoting *In re Gross v. N.Y. City Health & Hosps. Corp.*, 505 N.Y.S.2d 678, 679 (2d Dep't 1986)). Indeed, "[t]he purpose of invoking the doctrine is to prevent the infliction of *unconscionable injury and loss* upon one who has relied on the promise of another." *Am. Bartenders Sch., Inc. v. 105 Madison Co.*, 59 N.Y.2d 716, 718 (1983) (emphasis added).

When equitable estoppel is invoked against the government, the bar is even higher. "It is axiomatic that the doctrine of equitable estoppel cannot generally be invoked against governmental agencies in the exercise of their governmental function." *Atl. States Legal Found., Inc. v. New York State Dep't of Envtl. Conservation*, 991 N.Y.S.2d 151, 153 (3d Dep't 2014). Accordingly, equitable estoppel against a government agency "is foreclosed 'in all but the rarest cases,'" *N.Y. Med. Transporters Ass'n Inc. v. Perales*, 77 N.Y.2d 126, 130 (1990) (quoting *In re Parkview Assocs. v. City of New York*, 71 N.Y.2d 274, 282 (1988)), and requires "a showing of fraud, misrepresentation, deception, or similar affirmative misconduct, along with reasonable reliance thereon," *In re Enf't of Tax Liens ex rel. Cty. of Orange*, 903 N.Y.S.2d 60, 70 (2d Dep't 2010); *accord Yassin v. Sarabu*, 727 N.Y.S.2d 620, 621 (2d Dep't 2001).

Under the circumstances of this case, the elements of equitable estoppel have not been satisfied. Plaintiff and Detective Lemma have not shown, with respect to the actions of Nassau County, "[c]onduct which amounts to a false representation or concealment of material facts." *BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, 493 N.Y.S.2d 1, 3 (1st Dep't 1985). Although the Board could have expected Detective Lemma to rely on its initial indemnification decision and he could have, in fact, relied on it, his estoppel claim fails because there is no evidence (nor is it alleged) that the Board made its initial decision with knowledge that Detective Lemma had failed to disclose exculpatory information to prosecutors. To the contrary,

5

the evidence indicates that Nassau County's decision to rescind indemnification was based on the discovery of this material information (*i.e.*, that Detective Lemma was not acting within the proper discharge and scope of his duties when he knowingly withheld exculpatory information), which Detective Lemma disclosed for the first time at his deposition. In short, there is no basis for equitable estoppel because Nassau County made no false representations to, nor concealed any material fact from, Detective Lemma or plaintiff, but rather simply reassessed their initial indemnification decision in light of new information uncovered during discovery (which was supplied by Detective Lemma).[2]

None of the arguments raised by Detective Lemma or plaintiff are persuasive on the issue of equitable estoppel. For example, although Detective Lemma argues that Nassau County had an inherent conflict of interest in representing him in this case under *Dunton v. County of Suffolk*, 729 F.2d 903 (2d Cir. 1984), that case provides no support for equitable estoppel here because the potential conflict that was raised in *Dunton* (where the municipality is claiming that the individual officer acted outside the scope of his official duties) did not exist during the period of joint representation here. In fact, Nassau County did not dispute for purposes of trial that Detective Lemma was acting within the scope of his employment and agreed to be subjected to *respondeat superior* liability for plaintiff's state law malicious prosecution claim against Detective Lemma. Moreover, the *Monell* claim here was based on a failure to adequately train and supervise detectives, and not on a municipal policy. Thus, there was no inherent conflict nor does any failure to advise Detective Lemma of the potential conflict support equitable estoppel in this case on indemnification. Similarly, to the extent it is argued that Nassau County was negligent in their investigation of plaintiff's allegations and thus failed to uncover Detective Lemma's misconduct sooner, such negligence would not provide a basis for equitable estoppel.

In short, neither Detective Lemma nor plaintiff has demonstrated "fraud, misrepresentation, deception, or similar affirmative misconduct" by Nassau County, *In re Enf't of Tax Liens*, 903 N.Y.S.2d at 70, nor an "unconscionable injury," *Am. Bartenders Sch., Inc.*, 59 N.Y.2d at 718, to invoke this exceptional doctrine in this case. Accordingly, this Court finds no basis for equitable estoppel in this case, or any other grounds to preclude Nassau County from relying on the Board's finding that Detective Lemma will not be indemnified. Therefore, the motions by Detective Lemma and plaintiff to find in favor of Detective Lemma on his crossclaim for indemnification are denied, and the cross-claim for indemnification is dismissed based on the decision of the Board, as upheld by the New York Court of Appeals.

B. Attorneys' Fees

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010). In Section 1983 actions, however, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). Here, plaintiff's original counsel, Mr. Majid, requests $186,937.50 in

---

[2] For the same reasons, the Court finds plaintiff's claim that he also relied on the Board's 2006 decision for any award of damages provides no basis for equitable estoppel.

attorney's fees and $2,351.97 in costs. Plaintiff's successor counsel, the Brewington Law Firm, requests $411,841.75 in attorneys' fees and $19,357.60 in costs.

To calculate reasonable attorneys' fees, the Court uses the "lodestar figure," which is determined by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a 'presumptively reasonable fee.'" *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). "[T]he lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565-66 (1986)). Thus, the Supreme Court has recognized that "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 551. "The burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012).

The Supreme Court has held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley*, 461 U.S. at 440. However, a "plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997). Accordingly, "[t]he district court . . . has the discretion to award fees for the entire litigation where the claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories.'" *Kerin v. U.S. Postal Serv.*, 218 F.3d 185, 194 n.6 (2d Cir. 2000) (alterations in original) (quoting *Dominic v. Consol. Edison Co.*, 822 F.2d 1249, 1259 (2d Cir. 1987)).

1. Reasonable Hourly Rate

A "reasonable hourly rate" is "'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). This Court follows the Second Circuit's "forum rule," which "generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Id.* at 290 (quoting *Simmons*, 575 F.3d at 174). In *Arbor Hill*, the Second Circuit also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989). *See* 522 F.3d at 190. The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations

imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186 n.3 (quoting *Johnson*, 488 F.2d at 717-19). "The burden rests with the prevailing party 'to justify the reasonableness of the requested rate.'" *Hugee*, 852 F. Supp. 2d at 298 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Courts in this district have concluded that $200 to $450 per hour is a reasonable hourly rate for partners, $200 to $325 per hour is reasonable for senior associates, and $100 to $200 per hour is reasonable for more junior associates. *See Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017) (citing *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014)); *Ganci v. U.S. Limousine Service Ltd.*, No. 10-CV-3027 (JFB)(AKT), 2015 WL 1529772, at *5 (E.D.N.Y. Apr. 2, 2015) (collecting cases); *Hugee*, 852 F. Supp. 2d at 298-99; *Pilitz v. Inc. Village of Freeport*, No. 07–CV–4078 (ETB), 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (citing *Builders Bank v. Rockaway Equities, LLC*, No. 08–CV–3575 (MDG), 2011 WL 4458851, at *8 (E.D.N.Y. Sept. 23, 2011)); *Olsen v. County of Nassau*, No. 05–CV–3623 (ETB), 2010 WL 376642, at *4 (E.D.N.Y. Jan. 26, 2010); *Gutman v. Klein*, No. 03–CV–1570 (BMC), 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 9, 2009).

Ultimately, however, "in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, 'the range of "reasonable" attorney fee rates in this district depends on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.'" *Houston*, 234 F. Supp. 3d at 402 (quoting *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *30 (E.D.N.Y. Apr. 30, 2012)).

2. Hours Reasonably Expended

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Constr., Inc.*, No. 06-CV-7148 (GBD)(HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014) (citing *Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Id.* (first quoting *Hensley*, 461 U.S. at 434; then quoting *N.Y. Ass'n for Retarded Children, Inc.*, 711 F.2d at 1146); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items."). Finally, when the Court makes this determination, it "does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)).

3. Application

   a. Mr. Majid

Mr. Majid requests an hourly rate of $375. Defendants argue that $375 per hour is unreasonable in light of Mr. Majid's limited experience with civil rights litigation, and propose an hourly rate of $200.

In light of the prevailing hourly rates in this district, and all the other factors set forth in *Arbor Hill*, the Court concludes that $250 per hour is a reasonable hourly rate for Mr. Majid. Although Mr. Majid is an able lawyer, he does not have significant experience in civil rights litigation. Because the upper range of rates is "reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the practice of civil rights law and are recognized by their peers as leaders and experts in their fields," *Hugee*, 852 F. Supp. 2d at 300, a reduction is appropriate. The Court will use a rate of $250 per hour to calculate the lodestar for Mr. Majid.

Mr. Majid has submitted a billing summary of work performed on the case. Defendants contend that these hours should be denied in their entirety because the time records submitted were not made contemporaneously. Defendants further argue that Mr. Majid's hours should be reduced because they are excessive, redundant, or otherwise unnecessary.

As a threshold matter, the Court concludes that Mr. Majid's time records, though not exemplary, meet the requirements for an award of attorney's fees. As noted earlier, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Id.* at 298 (citing *Hensley*, 461 U.S. at 433). Thus, fee applications must be supported by contemporaneous records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. Ass'n for Retarded Children, Inc.*, 711 F.2d at 1148. This requirement is strictly enforced, which means that the records must be made "while the work is being done or, more likely, immediately thereafter. Descriptions of work recollected in tranquility days or weeks later will not do." *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).

In the instant case, Mr. Majid submitted records showing that he spent 498.5 hours on this matter and a sworn statement that these records were compiled contemporaneously. The Court concludes that Mr. Majid's sworn statement, and the records themselves, are sufficient to satisfy the contemporaneous time records requirement. To the extent that Detective Lemma challenges Mr. Majid's submissions on this ground, Detective Lemma's arguments are insufficient for the Court to conclude that the records were not contemporaneously made. Thus, Detective Lemma's motion on that ground is denied.

However, the Court finds the number of hours expended by Mr. Majid to be unreasonably excessive in several respects as discussed below. First, the Court agrees with defendants that, apart from fees incurred in preparing the instant motion, Mr. Majid is not entitled to any fees after January 30, 2007, when this Court granted Nassau County's motion to disqualify him. As Mr. Majid was no longer plaintiff's attorney, he cannot recoup fees after that date. Thus, for example, time that Mr. Majid spent opposing defendants' motion to implead him as a defendant is not recoverable.[3] The Court similarly concludes that time spent on Mr.

---

[3] The Court notes that, not only was this motion after Mr. Majid's representation of the plaintiff ceased, but it was based on his conduct in connection with the underlying criminal case (and not on his representation of plaintiff in this civil rights case).

9

Majid's opposition to defendants' successful disqualification motion is not recoverable. Mr. Majid did not prevail in opposing that motion, and the time is severable from the work he spent on behalf of his client.[4]

Second, in its review of Mr. Majid's billing records, the Court finds numerous instances of excessive time that warrant a reduction. For example, counsel spent over three hundred hours drafting the complaint. Having reviewed the complaint and billing entries, and having presided over this case (and many other Section 1983 cases), the Court finds that such time was grossly excessive and warrants a substantial reduction. In particular, although the complaint is lengthy and (as Mr. Majid noted at oral argument) required legal research before drafting, the Court concludes that any preparation for, or drafting of, the complaint beyond 40 hours is unreasonable under the circumstances of this case. *See, e.g.*, *Hines v. 1025 Fifth Ave. Inc.*, No. 14-CV-3661 SAS, 2015 WL 4006126, at *6 (S.D.N.Y. June 30, 2015) (finding 58.2 hours drafting a 27-page complaint was excessive even though complaint covered 13 years of events where "nothing was achieved by tracing thirteen years and adding layers of detail when it [wa]s evident" that that was not needed to render claims plausible); *Simmonds v. N.Y.C. Dep't of Corr.*, No. 06 CIV. 5298 (NRB), 2008 WL 4303474, at *7 (S.D.N.Y. Sept. 16, 2008) (finding that over 142 hours drafting complaint was "certainly an excessive amount given that it corresponds to over one month of full time work by a single attorney"); *Lynch v. Town of Southampton*, 492 F. Supp. 2d 197, 213 (E.D.N.Y. 2007) (finding 97.83 hours for 43 page civil rights complaint unreasonable and reducing time to 32 hours); *see also Romeo & Juliette Laser Hair Removal Inc. v. Assara I LLC*, No. 08 Civ. 442(TPG)(FM), 2013 WL 3322249, at *5-8 (S.D.N.Y. July 2, 2013) (reducing fees by 75% that were "grossly excessive relative to the nature of the work performed"); *Lide v. Abbott House*, No. 05 Civ. 3790(SAS), 2008 WL 495304, at *l-2 (S.D.N.Y. Feb. 25, 2008) (finding that "excessive and unnecessary hours spent on indisputably straightforward tasks" warranted a thirty percent reduction).

Third, with respect to the remaining work (outside of the work on the complaint), the Court finds that a reduction is also appropriate based on vague and block-billed time entries, such that the reasonableness of each entry cannot be easily determined. "Courts frequently respond to vague and difficult-to-decipher billing statements with an across-the-board percentage reduction in the fees claimed, often in the range of 20-30 percent." *Calvo v. City of New York*, No. 14-CV-7246 (VEC), 2017 WL 4119280, at *6 (S.D.N.Y. Sept. 15, 2017) (quoting *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 CIV. 05256 (KMW) (DF), 2012 WL 5816878, at *11 (S.D.N.Y. Nov. 14, 2012)); *see also, e.g.*, *Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04cv3600 (SWK), 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (applying 25% reduction to account for "block billing, vagueness, and excess").

Here, Mr. Majid's time records are riddled with vague and block-billed entries. For example, Mr. Majid's entry on February 19, 2006 states that he spent 4.75 hours on "Conf. w/ clients – Legal research (Malic. Prosec.) – Outline Complaint." (Majid Reply

---

[4] Detective Lemma also argues that it would be inequitable to require him to pay for Mr. Majid's work on the disqualification motion and the impleader motion because the Nassau County Attorney's Office made the decision to file those motions (rather than Detective Lemma). However, the Court need not address this issue because it finds that the time Mr. Majid spent on those motions is unrecoverable for the other reasons discussed above.

Decl. Ex. A at 2.) On September 6, 2006, Mr. Majid's entry states that he spent one hour on "Rev. Def's letter-Conf. w/ Arthur-Conf. w/ clients (J. Bianco now has case)." (*Id*. at 4.)[5] Given the frequency of such entries, the Court concludes that a 30% across-the-board reduction in hours is warranted in order to "trim the excess from counsel's billing entries." *Monette*, 2016 WL 4145798, at *8.

Based on the foregoing, the Court calculates the lodestar for Mr. Majid to be $22,600. The Court sees no reason to depart from the lodestar figure in this case. *See, e.g.*, *Perdue*, 559 U.S. at 553 (noting that lodestar figure includes "most, if not all," relevant factors in setting reasonable attorney's fee).

### b. The Brewington Law Firm

The Brewington Law Firm has submitted detailed records and an affidavit attesting to their legal experience and work on this matter.

The Brewington Law Firm requests the following rates:

| Attorney | Role | Rate |
|---|---|---|
| Frederick Brewington | Partner | $500 |
| Ira Fogelgaren | Partner | $300 |
| Gregory Calliste Jr. | Associate | $315 |
| Mili Makhijani | Associate | $250 |
| G. William Germano Jr. | Associate | $250 |
| Valerie M. Cartright | Associate | $315 |
| Johanna C. David | Associate | $225 |
| Cathryn Harris | Of Counsel | $250 |
| Cory Morris | Associate | $200 |
| Precilla Lockett | Associate | $150 |
| Ulrica Sheridan | Paralegal | $50 |

Although defendants generally object to these proposed rates as unreasonable, they suggest a reduction of only Mr. Brewington's rate to $400 due to the "uncontested facts of the case and the results achieved." (Lemma Opp. at 19.)

In light of the prevailing hourly rates in this district, and all other factors set forth in *Arbor Hill*, the Court concludes that $450 is a reasonable hourly rate for Mr. Brewington. As noted, courts in this district "award hourly rates ranging from $200 to $450 per hour for partners." *Houston*, 234 F. Supp. 3d at 402 (internal quotation mark omitted) (quoting *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (WDW), 2015 WL 5308094, at *4 (E.D.N.Y. Sept. 10, 2015)); *accord Martinez v. City of New York*, 330 F.R.D. 60, 70 (E.D.N.Y. 2019) ("Based on a survey of cases in the Eastern District of New York, experienced Section 1983 attorneys receive, on average, fees calculated at an hourly rate of between $300.00 and $450.00."). Given Mr. Brewington's extensive experience litigating and trying civil rights cases (which defendants acknowledge), a rate at the upper end of this range is appropriate. *See, e.g.*, *Hugee*, 852 F. Supp. 2d at 300. The Court also bases the conclusion to award Mr. Brewington a fee on the high end of the range in this district on its own observations of Mr. Brewington's excellent performance over the course of this entire litigation. Even though the Court does not view the case as particularly complex, Mr. Brewington did an impressive job during extensive motions practice and prevailed at trial. Accordingly, for the above reasons, the Court concludes that an hourly rate near the high end of the range in this district is warranted.

The Court notes that Mr. Brewington's regularly charged hourly rate is $500. Although that rate "is persuasive evidence of reasonableness, compensable attorneys' fees must ultimately conform to market rates."

---

[5] More examples include an entry for December 19, 2005 that states, "Conf. with client – Legal research (50-h issues) – Outline Complaint," and an entry for December 22, 2005 that states, "Legal research (criminal, civil issues) – Redraft and file NOC." (Majid Reply Decl. Ex. A at 1-2.)

*Tatum v. City of New York*, No. 06-cv-4290 (PGG)(GWG), 2010 WL 334975, at *5 (S.D.N.Y. Jan. 28, 2010). Accordingly, a district court is "not bound by the rate which a lawyer charges his other clients." *McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir. 1983). Here, the Court concludes, based on all of the relevant factors, that a rate above $450 would be unreasonable under the circumstances of this particular case.

As to the rates for the other Brewington Law Firm attorneys and their paralegal, the Court concludes that those hourly rates are appropriate. In particular, the requested rates are in accord with the prevailing rates in this district and are supported by the other factors set forth in *Arbor Hill* and *Johnson*, including the attorneys' legal education, training, and experience as set forth in the declaration supporting the motion for fees. (*See* Decl. of Frederick K. Brewington in Supp. of Mot. for Fees ("Brewington Decl.") ¶¶ 27-65, ECF No. 358-2.)

The Brewington Law Firm has also submitted a billing summary of work performed on the case. There is no dispute here that the submissions satisfy the contemporaneous records requirement. However, defendants contend that the hours should be reduced because the Brewington Law Firm obtained only limited success and because the hours are excessive, redundant, and improperly block billed.

i. Limited Success

Defendants argue that a reduction is appropriate because plaintiff's "degree of success was significantly modest in comparison with his original complaint and monetary request for damages." (Lemma Opp. at 21-23.) The Court disagrees.

First, the Court disagrees with defendants' characterization of plaintiff's victory in this case. The $175,000 damages award here was substantial, and not only nominal. The cases defendants rely on to argue that a reduction is appropriate are therefore inapposite. *E.g.*, *Farrar v. Hobby*, 506 U.S. 103, 115 (1992) (holding that the "technical nature of a nominal damages award or any judgment . . . bear[s] on the propriety of fees awarded under § 1988"). In fact, the Second Circuit noted in *Pino v. Locascio* that *Farrar*'s inquiry applies "whe[re] the plaintiff has won only *nominal* damages." 101 F.3d 235, 238 (2d Cir. 1996) (emphasis added) (citing *Farrar*, 506 U.S. at 103); *c.f.*, *Hines v. City of Albany*, 613 F. App'x 52, 54 (2d Cir. 2015) ("We are unpersuaded by Defendants' attempts to characterize the $10,000 settlement in this case as meager. Moreover, the success here was hardly technical.").

Second, the Court disagrees with defendants' argument that the Court should deduct time spent on the false arrest and false imprisonment claims. Defendants are correct that "[i]n calculating the total number of reasonable hours eligible for attorneys' fees, courts should subtract any 'hours dedicated to severable unsuccessful claims.'" *Tatum*, 2010 WL 334975, at *10 (quoting *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)). Courts "need not" reduce the fee award, however, "where the 'successful and the unsuccessful claims were interrelated and required essentially the same proof.'" *Id.* (quoting *Murphy*, 118 F.3d at 952). Thus, if a plaintiff's claims "involve a common core of facts" or are "based on related legal theories," so that "[m]uch of counsel's time [is] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," no reduction based on unsuccessful claims is warranted. *See Hensley*, 461 U.S. at 435. Instead, plaintiff's counsel "should be compensated even for work done in connection with an unsuccessful claim if that claim was

intertwined with the claim on which [plaintiff] succeeded." *Gierlinger*, 160 F.3d at 877.

Here, the Court finds that virtually all of plaintiff's claims—including his successful malicious prosecution claims in the form of a $175,000 jury award—arose from the same facts surrounding his arrest and subsequent prosecution. Specifically, there is significant overlap in the claims that stem from the same facts concerning plaintiff's arrest, imprisonment, and prosecution. Indeed, although Detective Lemma argues that the litigation regarding the facts leading up to the arrest were unnecessary to prove the malicious prosecution claim against him for his conduct after the arrest, the Court disagrees. Plaintiff needed to prove, among other things, that Detective Lemma's conduct following the arrest was malicious, and not simply an oversight or mistake. Therefore, it was critical to explore his involvement in the investigation (especially as the investigating officer) from its inception and to gather information from those who interacted with him during the investigation, arrest, and prosecution.

However, notwithstanding the inextricably intertwined facts, there are some portions of the unsuccessful claims, especially the legal work on the *Monell* claim and the claims against Officer Annarumma, that the Court concludes are distinct. For example, the legal research and briefing on the summary judgment motion with respect to the *Monell* claim, the jury instructions on that claim, the trial preparation on that claim, and other related work were not inextricably intertwined with the Section 1983 claim against Detective Lemma. Moreover, some small amount of the facts (such as the facts relating to Detective Lemma's supervision and training) were primarily aimed at the *Monell* claim. Similarly, the discovery and other legal work on the excessive force/battery claims against Officer Annarumma (although not extensive) were factually and legally distinct from the claims against Detective Lemma. In such situations, even where the time entries do not delineate work on the successful claims as compared to the unsuccessful claims, a court can in its discretion utilize an across-the-board cut. *See, e.g.*, *Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F. Supp. 2d 395, 401 (E.D.N.Y. 2010) (applying a 30% fee reduction even though the unsuccessful claim had a significant amount of "overlap" because of "how much time [p]laintiff's counsel would have saved by not litigating [plaintiff]'s unsuccessful claim"). Although Mr. Brewington suggested at oral argument that a modest reduction of 5% in the number of hours may be appropriate for work on the unsuccessful claims, the Court concludes that a 10% reduction is warranted in light of the nature of the claims and the nature of the work that was required to pursue the claims against Nassau County and Officer Annarumma apart from the claims against Detective Lemma.

In sum, although virtually all of the claims stem from the same material facts, an across-the-board 10% reduction in the number of hours is appropriate because of the additional legal work performed litigating the unsuccessful claims, especially the *Monell* claim and the excessive force/battery claim against Officer Annarumma.

ii. Excessive, Redundant, and Vague Hours

The Court further finds that the number of hours expended by the Brewington Law Firm on the case is unreasonably excessive for several reasons. First, the matter was overstaffed with nine attorneys, one law school graduate, and one paralegal, who spent more than one thousand hours on the matter. When evaluating fee applications, a district court has discretion to reduce

requested attorneys' fees where the prevailing party assigned an inordinate number of attorneys to litigate the action. *See, e.g.*, *Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (affirming district court's 25% across-the-board reduction because "plaintiffs overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel"); *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997) ("[I]t was within the purview of the court's discretion to determine whether or not the actual time expended by an additional attorney was reasonable."). Moreover, the billing records indicate duplicative and inefficient efforts. For example, from September 10 to 14, 2011, it appears that Mr. Brewington, Ms. Cartright, Ms. Lockett, and Ms. Harris spent over a hundred hours on the summary judgment motion. (*See* Brewington Decl. Ex. A at 43-45, ECF No. 358-3.)[6] More broadly, none of the legal or factual issues in the case was so complicated or unusual to warrant so many attorneys and hours. *See Husain v. Springer*, 579 F. App'x 3, 6 (2d Cir. 2014) (citing *DiFillippo*, 759 F.2d at 235-36) (holding that plaintiffs' "attorney's claim of 2,741.4 hours of attorney time was extravagant" in a Section 1983 litigation that "established no new principle of law" but rather "concerned a 'straightforward' application of existing law, calling into question their attorney's enormous expenditure of time").

Finally, the Court concludes that a reduction in hours is appropriate based on vague and block-billed time entries. For instance, there are numerous entries that mention only "Legal Research" or "Research." (*E.g.*, Brewington Decl. Ex. A at 4, 14, 70.) On September 5, 2011, Ms. Harris spent 10 hours on "File Review, document review." (*Id*. at 42.) As explained above, the Court may, in its discretion, determine a reduction is appropriate in light of such deficient entries.

Based on the foregoing, the Court concludes that a 20% percent across-the-board reduction to the Brewington Law Firm's hours is warranted. *See, e.g.*, *Kirsch*, 148 F.3d at 173 (finding no abuse of discretion "in the adjustment of the rate to be paid for [counsel]'s time or as to the 20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records); *Monette*, 2016 WL 4145798, at *8 (finding that the court has "discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee applications.'" (quoting *Kirsch*, 148 F.3d at 173)).

### c. Detective Lemma's Financial Situation

Finally, defendants argue that the Court should impose a fee reduction in light of Detective Lemma's financial situation. The Court disagrees.

Detective Lemma cites *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025 (2d Cir. 1979) to support the argument that the Court should consider his financial circumstances in determining the fee award here. In *Faraci*, the district court dismissed the plaintiff's Title VII complaint as frivolous and awarded the defendant the full amount of fees requested under 42 U.S.C. § 2000e-5(k). *Id.* at 1027. On appeal, the Second Circuit explained that "successful defendants in Title VII actions are entitled to attorneys' fees only where the suit is 'frivolous, unreasonable, or without foundation.'" *Id.* at 1028 (quoting

---

[6] Ms. Cartright also spent 16 hours "finaliz[ing] motions and exhibits." (*Id*. at 45.) The Court finds that this entry is excessive and vague.

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). In determining the amount of that fee, the Second Circuit stated that "courts should not hesitate to take the relative wealth of the parties into account," given that "fee awards are at bottom an equitable matter." *Id.* Since *Faraci*, courts in this Circuit have considered the parties' relative wealth almost exclusively when awarding fees against plaintiffs who bring frivolous or sanctionable claims. *E.g.*, *Shangold v. Walt Disney Co.*, 275 F. App'x 72, 73 (2d Cir. 2008) (affirming district court consideration of financial status of plaintiffs who submitted fraudulent evidence); *Tancredi v. Metro. Life Ins. Co.*, No. 00CIV.5780(LAK)(JCF), 2003 WL 22299203, at *6 (S.D.N.Y. Oct. 7, 2003), *adopted by* No. 00 CIV. 5780 (LAK), 2003 WL 22493855 (S.D.N.Y. Nov. 3, 2003) (reducing award against plaintiffs whose claims were frivolous in light of their limited financial resources and defendant's "enormous" resources). Indeed, defendants have not cited a single case where a court reduced a successful civil rights plaintiff's fee award based on a defendant's relative wealth, and this Court's research has not uncovered one. Relatedly, courts have considered "the wealth of the losing party, in cases of real or extreme hardship." *Mariani v. Banat Realty*, No. 86 CV 2895, 1993 WL 86530, at *1 (E.D.N.Y. Mar. 18, 1993); *see also Cohen v. W. Haven Bd. of Police Comm'rs*, 638 F.2d 496, 506 (2d Cir. 1980) ("Ordinarily the court would not focus exclusively on the financial condition of one party unless that party appeared to be in extremis."). Because this case does not involve either scenario, it is not clear that Detective Lemma's financial condition is relevant to the instant fee award determination.

However, even assuming the Court could consider the parties' relative wealth or Detective Lemma's financial circumstances, the Court, in its discretion, concludes that a reduction is not warranted. Detective Lemma's own submissions demonstrate that he has more than sufficient assets to pay any mandated attorneys' fees, particularly in light of the previously explained reductions and his ongoing retirement income. (*See* ECF Nos. 392, 401.)[7] In fact, Detective Lemma's most recent submission reported that he sold a home that he owned, and, as a result, his liabilities are significantly diminished. In short, considering all of the equitable factors in this particular case, including Detective Lemma's financial circumstances, the Court does not believe a reduction is warranted based on those circumstances or for any other equitable reason.

Accordingly, the Court calculates the total lodestar figure to be $298,122.55, based on the following:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Majid | $250 | 90.40 | $22,600 |
| Brewington | $450 | 316.92 | $142,614 |
| Fogelgaren | $350 | 14.14 | $4,949 |
| Calliste | $315 | 93.55 | $29,468.25 |
| Makhijani | $250 | 0.21 | $52.50 |
| Germano | $250 | 4.63 | $1,157.50 |
| Cartright | $315 | 204.02 | $64,266.30 |
| David | $225 | 0.70 | $157.50 |
| Harris | $250 | 96.60 | $24,150 |
| Morris | $225 | 1.40 | $315 |
| Lockett | $150 | 55.44 | $8,316 |
| Sheridan | $50 | 1.53 | $76.50 |

---

[7] The Court notes that it considers Detective Lemma's Deferred Compensation Plan as part of his net assets even with the potential tax penalty if the funds are accessed before Detective Lemma turns 59 years and six months old.

15

Finally, the Court sees no reason to depart from the lodestar figure in this case. *See, e.g., Perdue*, 559 U.S. at 553 (noting that lodestar figure includes "most, if not all," relevant factors in setting reasonable attorney's fee).

C. Costs

As noted, Mr. Majid requests $2,351.97 in costs and the Brewington Law Firm requests $19,357.60 in costs. Defendants object on the ground that many asserted costs have not been appropriately documented and are excessive.

"[A] court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Pennacchio v. Powers*, No. 05-CV-985 (RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (quoting *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)). "Such reimbursable costs 'include filing fees, process servers, postage, travel, and photocopying,' as well as legal research costs." *Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. M.C. Landscape Grp., Inc.*, No. 12 CIV 00834 (CBA) (VMS), 2016 WL 6998640, at *8 (E.D.N.Y. Aug. 25, 2016), *adopted by* 2016 WL 7017336 (E.D.N.Y. Nov. 30, 2016) (quoting *Capone v. Patchogue-Medford Union Free Sch. Dist.*, No. 04 Civ. 2947 (JS) (MLO), 2011 WL 743573, at *5 (E.D.N.Y. Feb. 23, 2011)). The moving party "bears the burden of adequately documenting and itemizing the costs requested." *Id.*; *accord First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, No. 10-CV-696 (KAM)(SMG), 2013 WL 950573, at *10 (E.D.N.Y. Mar. 12, 2013). In particular, "the party must include as part of the request 'an affidavit that the costs claimed are allowable by law, are correctly stated and were necessarily incurred,'" and "[b]ills for the costs claimed must be attached as exhibits." *D.J. ex rel. Roberts v. City of New York*, No. 11-CV-5458 (JGK)(DF), 2012 WL 5431034, at *9 (S.D.N.Y. Oct. 16, 2012) (quoting Local Civ. R. 54.1(a)), *adopted by* 2012 WL 5429521 (S.D.N.Y. Nov. 7, 2012).

Both Mr. Majid and the Brewington Law Firm attempted to rectify documentary deficiencies relating to their requests for costs in their replies. (*See* Brewington Reply Decl. Ex. A; Majid Reply Decl. Ex. B.) However, the exhibits attached to those reply declarations do not support the full amount of costs sought by either Mr. Majid or the Brewington Law Firm. After reviewing those exhibits, the Court finds that Mr. Majid has provided support for an award of $1,200.14, that the Brewington Law Firm has provided support for an award of $8,177.30, and that none of those costs are excessive. Accordingly, the Court awards $1,200.14 and $8,177.30 in costs to Mr. Majid and the Brewington Law Firm, respectively. The Court denies plaintiff's other requests for costs without prejudice, and will afford plaintiff's counsel the opportunity to submit further supporting documentation for their cost requests.

III. CONCLUSION

For the reasons set forth herein, the Court awards Arshad Majid $22,600 in fees and $1,200.14 in costs and awards the Brewington Law Firm $275,522.55 in fees and $8,177.30 in costs. Detective Lemma's crossclaim for indemnification is dismissed.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States Circuit Judge
(Sitting by designation)

Dated: December 18, 2019
Central Islip, NY

* * *

Plaintiff was formerly represented by Arshad Majid, Majid & Associates, P.C., 300 Rabro Drive, Hauppauge, NY 11788, and is currently represented by Frederick K. Brewington, the Law Offices of Frederick K. Brewington, 556 Peninsula Boulevard, Hempstead, NY 11550. Nassau County is represented by Matthew A. Cuomo, Cuomo LLC, 9 East 38th Street, New York, NY 10016, and Detective Lemma is represented by Mitchell Garber, Worth, Longworth & London, LLP, 111 John Street, New York, NY 10038.